771 So.2d 378 (2000)
Luke EDWARDS and Reach, Inc., Appellants,
v.
Charles L. ROBERTS and Gloria H. Roberts, Appellees.
No. 98-CA-00735-COA.
Court of Appeals of Mississippi.
November 7, 2000.
*379 Craig Geno, Jackson, Attorney for Appellants.
Harvey Christopher Frelon, Attorney for Appellees.
EN BANC.
SOUTHWICK, P.J., for the Court:
¶ 1. In 1991 the plaintiffs received a favorable jury verdict in their suit for personal injuries. Judgment was then entered. Almost a year later, the circuit judge denied all post-trial motions. Three days after that, another order was entered that granted a judgment notwithstanding the verdict. Neither party did anything about these conflicting orders until 1996 when this suit was brought in the same court to determine the effect of the inconsistent rulings. The court found that the initial denial of the post-trial motions was the valid order and the three-day later order was held for naught. We find no reversible error and affirm.

STATEMENT OF FACTS
¶ 2. A jury found defendants Luke Edwards and REACH, Inc. liable to the plaintiffs Charles and Gloria Roberts for intentional infliction of emotional distress. Compensatory damages of $250,000 and punitive damages in the amount of $400,000 were awarded. The merits of the judgment are not before us, making further details about the personal injury itself irrelevant to the decision that we are called on to make. The appellate issues *380 revolve around the procedural rules regarding orders on post-trial motions. We detail chronologically the proceedings after the jury verdict:
1) January 31, 1991. Judgment entered based on jury verdict for $250,000 in actual damages and $400,000 in punitive, with Edwards and REACH jointly liable.
2) February 8, 1991. Edwards and REACH filed a motion for JNOV or for a new trial.
3) March 15, 1991. A hearing on this motion was held.
4) February 24, 1992. The circuit court denied the motion. The order noted that the March 1991 hearing had been held, but found that under then-Uniform Circuit Court Rule 2.06 the motion had been abandoned because the defendants had not "pursued the motion to decision" for more than two terms of court.
5) February 27, 1992. The circuit court without referring to its order three days earlier, stated that based on the hearing held on March 15, 1991, and on the briefs, pleadings, and testimony, the motion for a JNOV was granted as to REACH who was thereby found to have no liability. As to Edwards, the award of punitive damages was set aside, but the actual damages remained assessed. This order if effective left a judgment of $250,000 solely against Edwards.
6) No appeal or further action on that judgment occurred until 1996.
7) May 21, 1996. A complaint for declaratory judgment was filed by REACH and Edwards, seeking an interpretation of the events just described.
8) March 24, 1998, filed April 1, 1998. The same circuit judge entered the following order, which is complete except as to the formal parts of the document:
This cause came on to be heard on February 27, 1998, on Complaint for Declaratory Judgment and Answer thereto, and the Court, having considered the Complaint, the Answer and the Exhibits and having heard from counsel for the Plaintiffs and the Defendants, finds that the Order dated February 27, 1992, should be set aside and held for naught.
IT IS THEREFORE ORDERED that the February 27, 1992, Order entered in this cause is hereby set aside and the order dated February 24, 1992, which denied Defendants' Motion for judgment notwithstanding the verdict or in the alternative, for a new trial, or in the alternative, for remittitur, be and is the final order of the Court.
9) May 1, 1998. Edwards and REACH appealed to the Supreme Court and the cause was deflected here.
10) April 12, 2000. After a remand from this Court for fact-findings explaining its 1998 ruling, the trial court found that the February 27, 1992 order was "inadvertently entered" and that the February 24 order remained the correct final judgment.
¶ 3. With this as the background, we proceed to analyze the legal effect.

DISCUSSION

1. Applicability of Declaratory Judgment Procedures
¶ 4. We first determine whether declaratory judgment procedures were appropriate in 1996 regardless of the merits of the decision reached. Left ambiguous from 1992 was the effect of two orders entered three days apart that resolved a dispositive motion in opposite ways.
¶ 5. A court may "declare rights, status, and other legal relationships regardless of whether further relief is or could be claimed." M.R.C.P. 57(a). Creditors of REACH, Inc., one of the defendants in the 1992 judgment, wished to have declared which of these dueling orders was effective so that claims in bankruptcy could be resolved. Determining the effect of a prior *381 court order is not expressly within the examples given in the rule. See M.R.C.P. 57(b). The Rule states that the "enumeration... does not limit or restrict the exercise of the general powers stated in paragraph (a) in any proceeding where declaratory relief is sought in which a judgment will terminate the controversy or remove an uncertainty." M.R.C.P. 57(b)(4). We find no precedent in which Rule 57 was used to seek clarification of a court order.
¶ 6. What determines the issue finally is found in the comments following the Rule.
The purpose of Rule 57 is to create a procedure by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it.
M.R.C.P. 57 cmt. There certainly is an actual controversy here, one that existed even before the declaratory judgment action as an issue in bankruptcy proceedings involving REACH, Inc. The Roberts's apparently filed a claim in that bankruptcy and a decision was there made to seek an answer from the Hinds County Circuit Court as to which order was operative. The just-quoted comment speaks of using declaratory judgment proceedings when the controversy is not yet ripe for any other judicial decision. That was not the situation here, as the bankruptcy court was not only available in the abstract but had its jurisdiction already invoked.
¶ 7. It might be said that the Hinds County Circuit Court was in a better position to answer which order should be considered effective. That is likely true regarding an order of any court that creates ambiguity in the minds of parties who later need to know what the order means. Yet we fail to see the benefits to the judicial system and ultimately to the law to use Rule 57 as a general warrant to ask a court "what did you mean?" There is some level of clarity that each pronouncement by a court attains, with the range extending from absolute opaqueness to complete transparency. Lengthy judicial documents, such as some appellate court opinions, can vary widely in lucidity from paragraph to paragraph. The civil rules permit litigants at the trial and appellate level to seek an immediate clarification of a judgment. M.R.C.P. 59(a) (includes requests to amend judgments); M.R.A.P. 27 (M.R.A.P. 40 cmt. states that Rule 27 is used to request a clarification of an appellate opinion). There can also be an appeal to the next level court.
¶ 8. Once litigation is complete, though, judgments and opinions "speak for themselves," an overused phrase that means nothing more than an order is a completed formal document and cannot be embellished or amended after-the-fact because of what a court later concludes should have been said. What one or a combination of orders means must be based on general principles of law and not on asking the issuing court years later to clarify. A suit to collect on the debt of the former judgment is one frequent place that the order may need to be interpreted. Because of REACH's bankruptcy, a similar argument could be made in those proceedings as to what to make of all this.
¶ 9. We conclude that this was not a controversy that absent a declaratory judgment action could not be timely resolved. Accordingly, it cannot be resolved as a declaratory judgment. The Roberts plaintiffs and REACH were in a court bankruptcy. That a federal bankruptcy judge would be amenable to having the circuit court resolve this issue is understandable, but a Rule 57 declaratory judgment is the wrong procedure.
¶ 10. For these reasons we hold that a declaratory judgment proceeding was inappropriate. If ever this Rule could be used for purposes of seeking a clarification from a court of its own order, a matter of some doubt, there was no right to resort to these procedures here.

*382 2. Alternative Procedures

¶ 11. Still, even though the parties have been traveling under the name of a suit for declaratory relief, if we find that the only defect is in labels, we can still consider the claim that the February 27, 1992 order is invalid. Recasting of pleadings is not unusual. A Rule 12(c) motion for judgment on the pleadings is by the Rules themselves transformed into a Rule 56 motion if evidence outside the pleadings is considered. M.R.C.P. 12(c). Under Supreme Court analysis whether a motion is one under Rule 59 or Rule 60 does not depend on its heading but instead on its function: if it is filed within ten days from judgment and calls into question the correctness of the judgment, "we will presume that the motion has been filed under Rule 59 without regard to how it may be styled." Bruce v. Bruce, 587 So.2d 898, 904 (Miss.1991).
¶ 12. Outside of the civil rules, the Supreme Court has recognized that using the wrong name on complaints is not necessarily fatal. A party with a claim against an estate filed a answer and counterclaim to the petition for letters of administration, but never filed a claim for probate as she should. Williams v. Mason, 556 So.2d 1045, 1050 (Miss.1990). The Court held that with the "exception of the label on her pleading, Mason did all that our probate claim statute requires. She set forth the nature of her claim and summarized its factual basis. She complied with the important verification requirement ... and filed her counterclaim ... well within the ninety day limitations period." Id. This was considered an effective probate of the claim.
¶ 13. Thus we look to whether a proper action was in all but label brought. What we find is that the proper parties were in the proper court to determine whether relief from a judgment should be granted, and relief was actually given. This narrowly available remedy is not a clarification by the issuing judge but a complete change. This case's similarities to a Rule 60 motion are these:
1) Like a Rule 60 motion, the "Complaint for Declaratory Relief" filed in 1996 by the Roberts's was filed in the same action as the original tort suit from 1991;
2) Unlike a Rule 60 motion, the complaint made no claim as to which of the February 1992 orders should be found valid but just asked the court to decide; that was a temporary difference since in short order the other party alleged that the second order was valid and should be upheld;
3) Like a Rule 60 motion notice was given to the former defendant;
4) Like a Rule 60 motion, the defendant answered by asserting that an order was valid and should be upheld;
5) Like a Rule 60 motion, the court ultimately "set aside and held for naught" an order. This was no judgment simply declaring which order controlled but an explicit voiding of a previous court order. As will be discussed, the judge's factual finding results in the inevitable legal conclusion that the order that was set aside was void. That is Rule 60(b)(4) relief.
¶ 14. One issue that might have been raised had this been identified as a Rule 60 motion from the beginning is that it was being brought unreasonably late. There is no explicit time limit on a motion declaring a judgment void, other than it must be within a "reasonable time." M.R.C.P. 60(b). The Supreme Court has held that delay in claiming that a judgment is void is not fatal to the claim:
The grant or denial of a 60(b) motion is generally within the discretion of the trial court, unless the judgment in question is found to be void. In that case the trial court has no discretion; it must set the void judgment aside. Overbey v. Murray, 569 So.2d 303, 306 (Miss.1990).
Sartain v. White, 588 So.2d 204, 211 (Miss. 1991). In Overbey, the Court said that *383 "Federal authority has interpreted this to mean that there is no effective time limit, with the rationale being that no amount of time or delay may cure a void judgment." Overbey, 569 So.2d at 306. Therefore no issue of unreasonable delay could usefully have been raised in the present case.
¶ 15. For these reasons we conclude that nothing occurred in this suit that would not have occurred in a Rule 60 action, from the court chosen and parties joined to the issues ultimately raised and the relief given. The evidence was the orders themselves, supplemented by the judge's knowledge of what occurred. Without having called it one, this was in effect an action under Rule 60(b) for relief from judgment. Either the last order entered was void or it controlled. For us to dismiss because the suit was put in the form of a declaratory judgment would do nothing more than permit better-styled pleadings to be filed that would lead to the same considerations by the trial court. That expense and inefficiency in the cause of purity of pleading serves neither the litigants nor the courts.

3. Validity of February 1992 orders
¶ 16. Therefore we turn to the issue of the potential invalidity of either February 1992 order. The February 24 order noted that a hearing on the motion had been held on March 15, 1991. Still, the court relied on a rule that a movant must pursue its motion "to hearing and decision by the court during the term at which the motion was filed, or at the next term of the court" if the motion was filed in vacation; however, if the court allowed, "the motion may be taken out for hearing in vacation or at a subsequent term." Unif. Cir. Ct. R. 2.06 (repealed by adoption of UCCCR May 1, 1995).[1] Non-compliance with this "procedure shall be considered to be an abandonment" of the motion, but the judge had discretion to take up the motion at a later term. Thus the rule created no absolute bar to considering a dilatorily pursued motion. See, generally, Berryman v. State, 734 So.2d 292, 294 (Miss.Ct.App. 1999).
¶ 17. Since a motion hearing occurred in March 1991, and the docket reveals that briefs were thereafter filed, it would appear that the only delay was by the trial judge himself in entering an order. To the extent the trial judge was ruling on February 24, 1992 that the defendants should have done more to prompt an order from him, that is a rather high hurdle to surmount. Nothing in Rule 2.06 would have prevented the court from deciding the motion after two intervening terms of court. The circuit court on February 24, 1992 had discretion that it could exercise. It did so by denying the motion. Nothing is void about that act.
¶ 18. On February 27, which was prior to the time for taking an appeal, discretion was exercised for a second time and without explanation by granting the motion for JNOV in part.
¶ 19. Analyzing the legal effect of these actions requires some care. The initial denial of the motion for a JNOV was within the court's power regardless of whether the court may have relied on improper grounds. The court's order might or might not have been overturned if appealed. The order itself though was not void. When the trial judge three days later implicitly overturned the previous order by explicitly granting in part the motion for a JNOV, he might have on his own motion been granting relief from the previous judgment. Of course, in the present action the court six years later said the second order was inadvertent. Since that could not be known from the order itself, *384 our question is whether the second order was facially valid.
¶ 20. Nothing in the civil rules authorizes a motion to reconsider the denial of a motion for a JNOV or for a new trial. Motions for JNOV are governed by Rule 50(b) while motions for new trials are controlled by Rule 59. Under these rules, each motion must be filed within ten days of the entry of the judgment. M.R.C.P. 50(b) & 59(b). That initial motion for a JNOV was timely filed eight days after the 1991 judgment. However, the sua sponte "motion" to reconsider the just-entered order occurred over one year after the 1991 judgment. We must decide whether once a motion under Rule 50 is filed by a litigant, then denied by the court, any window of opportunity opens for the trial judge to act on his own initiative to reconsider the denial.
¶ 21. We start with the settled law that after a motion for new trial has been denied, no right exists to file for reconsideration. We find that reasoning equally applicable to motions for JNOV. "When the procedure authorizing a motion for a new trial has been followed and, pursuant to proper notice, the parties have made their representations to the court, and the court has duly considered and made his decision upon that motion, that completes both the duty and the prerogative of the court." Griffin v. State, 565 So.2d 545, 550 (Miss.1990) (emphasis added). In Griffin, the lower court sustained two criminal defendants' motion for new trial as to two of the counts, and overruled as to one count. Id. at 545. The defendants fled and were captured several years later. Id. At that time the State moved to set aside the order granting a new trial. Id. The judge sustained the State's motions because he believed that he had made an error at law in granting a new trial. Id. On appeal, the Supreme Court found that the judge had no authority to revoke his earlier order for a new trial. Id.
¶ 22. The Griffin court relied on other states that had addressed the same question. Among other authorities, the court quoted the California Supreme Court's holding that, "It has long been the rule that `A final order granting or denying [a motion for a new trial], regularly made, exhausts the court's jurisdiction, and cannot be set aside or modified by the trial court except to correct clerical error or to give relief from inadvertence....'" Griffin, 565 So.2d at 549 (citing Wenzoski v. Central Banking Sys., 43 Cal.3d 539, 237 Cal.Rptr. 167, 736 P.2d 753, 754 (1987)). Once a motion for new trial has been ruled upon:
[I]f the party ruled against were permitted to go beyond the rules, make a motion for reconsideration, and persuade the judge to reverse himself, the question arises, why should not the other party who is now ruled against be permitted to make a motion for re-reconsideration, asking the court to again reverse himself? ... This reflection brings one to realize what an unsatisfactory situation would exist if a judge could carry in his mind indefinitely a state of uncertainty as to what the final resolution of the matter should be.
Griffin, 565 So.2d at 549-50 (citing Drury v. Lunceford, 18 Utah 2d 74, 415 P.2d 662, 663-64 (1966)).
¶ 23. Though Griffin is a criminal case, the Supreme Court's principal authorities for holding it improper to move for reconsideration of a motion for new trial were civil cases under versions of Rule 59. The Supreme Court's conclusion that ruling on one motion for new trial exhausts the power of the court to entertain another such motion, certainly has an impact here. Until a judgment is final, a court has the authority to amend it. Griffin v. Tall Timbers Development, Inc., 681 So.2d 546, 552 (Miss.1996). Conversely, once it is final the authority is lost. The court's initiating it own reconsideration removes the finality of the judgment after an earlier motion was denied. That creates *385 the same difficulties that were discussed in Griffin v. State. Just as a second motion under Rule 59(a) cannot be brought by a party after an earlier Rule 59(a) motion has been denied, neither can the trial court itself entertain its own reconsideration under Rule 59(d) or Rule 50(b).
¶ 24. This is not to say that the finality of the judgment created by the denial of the first motion for new trial is absolutely unchangeable. Griffin v. State itself says that one last tool remainscorrecting clerical error, relieving inadvertence, responding to newly discovered evidence, or otherwise considering the grounds for a Rule 60 motion. Griffin, 565 So.2d at 549. Since the state and federal versions of Rule 60 are similar, we can seek a better understanding of what can be achieved under Rule 60 by examining an explanation of federal caselaw. The Mississippi Supreme Court has said "the federal construction of the counterpart rule will be `persuasive of what our construction of our similarly worded rule ought to be.'" Bruce v. Bruce, 587 So.2d 898, 903 (Miss.1991) (citation omitted). The following section of an eminent treatise on the federal rules first explains that a denial of a new trial motion cannot be reconsidered, and then suggests what remains:
Term time as both a grant and limitation upon the district court's power over its final judgments has been eliminated.[[2]] In lieu thereof and in the interest of judgment finality a short time period, that is not subject to enlargement, has been substituted, within which a party may move for a new trial or to alter or amend the judgment. When the court has decided such a motion in a way that the finality of the judgment has been restored, then relief, if any, should come by appeal or by a motion under Rule 60(b), which does not affect the finality of the judgment or suspend its operation. It would be destructive of the general aim of the Rules to permit successive attacks upon final judgments on motions to reconsider orders that deny new trial, or that deny or grant an alteration or amendment of the judgment.
6A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.13[1], at 59-278 (2d ed.1993) (emphasis added).
¶ 25. The relevant motion here was not a Rule 50(b) motion for a JNOV, since that motion had already been denied and there cannot be a second such motion. Instead, this was at best a Rule 60 motion initiated by the judge himself soon after he entered the February 24 judgment. There is no counterpart in Rule 60(b) to what is set out in Rule 59(d), namely, that the trial court itself may initiate a motion. In one somewhat distinguishable case, the Supreme Court held that a trial judge could not on his own motion grant relief from judgment under Rule 60(b). State ex rel. Mississippi Bureau of Narcotics v. One Chevrolet Nova Automobile, 573 So.2d 787, 789 (Miss.1990). However, that was a judge's sua sponte setting aside of a Rule 55 default judgment five years after the default had been granted. Id. at 788-89. The court stated that no motion was made by any party to set aside the five year old default and the judge could not himself do so. Id. at 789.
¶ 26. What we find more in point is the general interpretation of federal Rule 60(b) that "the court has power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." CHARLES ALLAN WRIGHT AND ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRAC. & PROC. 226 § 2865 (2d ed.1973). If within three days of the February 24 order the trial judge became aware of something that he thought was *386 cognizable under Rule 60, then the absence of a motion might not by itself bar consideration. Griffin v. State in dicta recognizes the right to correct inadvertent error. Griffin, 565 So.2d at 549.
¶ 27. We now look at what grounds for relief were appropriate. There are two sections to Rule 60 that allow relief from judgment. The first is for clerical mistakes, which may be corrected on the court's own initiative. M.R.C.P. 60(a). However, this rule "can be utilized only to make the judgment or other document speak the truth; it cannot be used to make it say something other than was originally pronounced." M.R.C.P. 60(a) cmt. The trial judge cannot on his own initiative change his mind and decide under Rule 60(a) that he should have granted the motion for JNOV instead of denying it. However, the rules seemingly permit a judge to decide that he always meant to sign an order that granted a motion but inadvertently signed a draft order denying it. This is the specific issue of Rule 60(b)(2), which is relief from judgment because of "accident or mistake." In the April 12, 2000 order we have the trial court's explanation that nothing of this sort occurred on February 27. It was that second order, not the first, that was inadvertent.
¶ 28. Under Rule 60(b), the trial court on perhaps his own motion may decide that the original motion was entered by mistake, fraud of a party, or for other reason justifying relief from judgment. M.R.C.P. 60(b). Had the trial court believed that one of the grounds for Rule 60(b) existed and explained which one it was, then we could evaluate the validity of the exercise of discretion on February 27. Instead, the trial judge has informed us that no proper Rule 60 grounds existed.
¶ 29. Before leaving the procedure that was followed, we consider the propriety of the original trial judge's addressing in these proceedings what he had done several years earlier. In a collateral attack on a former judgment, voidness is decided solely from what appears on the face of the record. Bolls v. Sharkey, 226 So.2d 372, 376 (Miss.1969). However, in a Rule 60 claim brought before the same court and involving the same parties, evidence beyond the pleadings and order themselves can be utilized. The comment to Rule 60(a) states that evidence outside the record can be considered. M.R.C.P. 60(a) cmt. No such explicit statement appears as to Rule 60(b), but the nature of the claims that can be made would require extraneous evidence. Accident, mistake, or fraud could not be shown except in the most unusual circumstances strictly from the record. In one case evidence was introduced at a Rule 60 hearing that an automatic stay in bankruptcy had been entered before the state court judgment was entered. This made the state court order void. Overbey v. Murray, 569 So.2d 303, 307 (Miss.1990). In another Rule 60 proceeding, evidence was admitted that the named corporate plaintiff did not exist, as it had sued under an incorrect name "Mississippi Sand & Gravel" instead of the correct "South Mississippi Sand & Gravel." The Supreme Court declared the earlier order void and set it aside. Southern Trucking Service, Inc. v. Mississippi Sand and Gravel, Inc., 483 So.2d 321, 324 (Miss. 1986). See generally, Fred L. Banks, Jr., "Trial and Post Trial Motions," in 1 JEFFREY L. JACKSON, MISSISSIPPI CIVIL PROCEDURE §§ 13:15-13:21 (1999).
¶ 30. Though evidence outside the record is admissible, this still does not mean under Rule 60(b) the judge himself should state what his reason had been for signing an order. Had the original trial judge not been ruling on the motion, the question would even more emphatically arise of whether evidence should be sought from the issuing judge of his reason for entering an order. We defer that issue since we find that even if Judge Hilburn had not been available for an explanation, the outcome would be the same. Since a trial judge does not have the authority to reconsider his denial of a motion for a JNOV, the court's jurisdiction was exhausted after *387 the February 24 denial. After jurisdiction was exhausted another order appeared. That order should be viewed as were orders under pre-Rules practice that were entered after the term of court. Formerly, once the term of court ended in which the final judgment was entered, a court lost control over its judgment. McNeeley v. Blain, 255 So.2d 923 (Miss.1971). Entering a new order after the expiration of the term was a nullity. McDaniel Bros. Const. Co. v. Jordy, 254 Miss. 839, 851, 183 So.2d 501, 506 (1966). There is no need to reacquaint ourselves with the intricacies of such rules other than to note that ending the power of the trial court to issue orders in a case is not a novel idea. A court does not have jurisdiction to enter orders indefinitely. Once the case is over, as with the end of the term of court in former practice or some other terminal event as under the civil rules, later orders by the court are not presumed valid because jurisdiction facially has been lost. We find that the Supreme Court has addressed this question:
[t]he doctrine, that a judgment however erroneous of a court having jurisdiction may not be collaterally assailed, is only correct when the court proceeds, after acquiring the jurisdiction, according to established rules governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it.
Jones' Estate v. Culley, 242 Miss. 822, 831-832, 134 So.2d 723, 726-727 (1961).
¶ 31. Since, the present suit is not a collateral attack but a claim under Rule 60 for relief from the court that issued the order, the right to set aside the order is all the clearer.
¶ 32. In the present case the circuit court initially had jurisdiction, but after entering the denial of the motion for a JNOV, jurisdiction ended. A similar defect in a court's ruling occurs when a judge improperly alters a criminal sentence after his jurisdiction to do so has ended. See generally, Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 937 (Miss.1997).
¶ 33. A contrast is appropriate. We have held that the proceedings that were begun for a declaratory judgment under Rule 57 should be renamed as a motion for relief from judgment under Rule 60. Those proceedings properly looked at the validity of the 1992 orders and in 1998 declared that one was void. All that we have done is put a new heading on the action but not changed its substance. On the other hand, we have refused to imply that the February 27, 1992 order itself was validly issued under the court's inherent right pursuant to Rule 60 to correct inadvertent error. The right existed both in 1992 and in 1998, even though jurisdiction in the trial court had otherwise terminated, to act under Rule 60. The difference is that nothing in the record on February 27, 1992 suggested in any way that the court was using that authority. An order appeared after the normal time to act, unbidden by a motion and unexplained by the court.
¶ 34. For us to imply the jurisdictional facts necessary to make that order valid is to combine imagination with acquiescence to an excessive degree. Of all the possible reasons to explain that post-final judgment order of February 27, the one valid reason is not sufficiently probable to justify the presumption of correctness that applies to court orders issued when the court clearly has jurisdiction. Cotton v. Harlan, 124 Miss. 691, 87 So. 152, 152-53 (1921) (normally all jurisdictional facts are conclusively presumed to have existed, whether there are recitals in the record to show them or not.) The dissent implies that the action was under Rule 52(b). That is a Rule for amending findings, not reversing decisions. A decision that "no" should be "yes" was the difference between the February 24 and February 27 orders. Though a Rule 52(b) can be made in tandem with Rule 50 and Rule 59 motions, once those motions are denied Rule 52(b) is not a *388 means to ask for or for a judge to initiate reconsideration. Regardless, to presume that the court was acting under this Rule after its authority had otherwise expired and of course the trial judge has since stated that he was notis as speculative as any other possible means to justify the second order. Under the dissent's analysis, Rule 52(b) becomes the opening for reconsidering a denial of reconsideration that Griffin said was beyond the court's jurisdiction.
¶ 35. The difference between the dissent and the majority here is neither more nor less than the point of whether a court has the authority to keep altering a judgment. Within the limits guided by the Rules it is proper for amendments, alterations, and complete reversals to occur. The Rules permit only one effort, though even there an exception exists for the matters under Rule 60.
¶ 36. This then brings us to what parties should have done in 1992 and the result of any default in proper action. Neither months nor years had passed between the February 24 and February 27 orders, but procedurally it might as well have been. Authority had been lost on February 24. We acknowledge that the victor in the February 24 order may have been in a quandry after the February 27 order, but not appreciably greater than the one facing his adversary. For us to hold that the later order controls for the simple fact that it is later, eviscerates the effect of cases such as Griffin. Parties have the responsibility to seek an appellate remedy for trial court errors or else suffer the effect of those rulings. Usually that obligation does not include this extra issue of knowing which of two decisions is the final judgment of the court. The obligation of appeal remains, though, even when the trial court exceeds its authority in this way.
¶ 37. Even if neither party could be precisely certain as to the effect of the court's actions, indeed, because neither party could be, it would have behooved them both to appeal. Since neither did, we are left with deciding the effect of the actions taken in 1992. That decision, already discussed, is that the second order was beyond the court's authority.
¶ 38. The 1998 declaratory judgment that set aside the February 27, 1992 order is affirmed.

4. Supplemental briefing
¶ 39. We note that after the trial court made new findings on April 12, 2000, we determined that "the parties should be given an opportunity to respond to the findings"and stated that they "may simultaneously file" briefs with the court. We later extended the time within which to file briefs, but left it as an option. Only Edwards and REACH filed. Now REACH (Edwards is not shown as joining this argument) seeks to invoke the rule that a party's failure to submit a brief is tantamount to a confession of error. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). That rule has no relevance to an appeal in which both parties briefed the case but the Court on its own has determined that an additional finding by the trial court is necessary. M.R.A.P. 14(b). Applying this principle here would be the equivalent to applying it when the appellant has filed the initial brief but has determined that the appellee's brief raises nothing that requires a rebuttal brief to be submitted. We granted an opportunity to brief, nothing more. No confession of error has occurred.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF HINDS COUNTY SETTING ASIDE A JUDGMENT NOTWITHSTANDING THE VERDICT OF FEBRUARY 27, 1992 IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO APPELLANTS.
McMILLIN, C.J., LEE, MOORE AND MYERS, JJ., JOIN THIS SEPARATE OPINION.
*389 PAYNE, J., CONCURRING IN PART AND DISSENTING IN PART, WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J., BRIDGES AND THOMAS, JJ.
IRVING, J., NOT PARTICIPATING.
PAYNE, J., concurring in part, dissenting in part:
¶ 41. I wholeheartedly agree that this action is not appropriate for a declaratory judgment under Rule 57. However, I respectfully dissent to the remainder of the majority opinion because I believe that in 1996 the time had long since passed for any partyincluding the judge who entered the judgmentto seek to question, amend, reverse or explain the final judgment entered on February 27, 1992.
¶ 42. The same trial judge on April 12, 2000 says that the February 27, 1992 judgment was entered inadvertently. The majority then states that this made the second judgment void, and by means of metamorphosis seems to change this unauthorized Rule 57 declaratory judgment into a Rule 60(b)(4) action, declaring the judgment void. There is no time limit on a void judgment, therefore this strained application would get this action (by whatever name) beyond the time limit for Rule 60(b)(1)(2) and (3). The only problem there is that, as the majority states, "The evidence was the orders themselves, supplemented by the judge's knowledge [expressed 8 years later] of what occurred. Without having called it one, this was in effect an action under Rule 60(b) for relief from judgment. Either the last order entered was void or it controlled." I have found no evidence that either judgment was void. The problem I find in the majority's dissection of this point is that this is a question of inadvertance, not a void judgment. Rule 60(b)(2) allows correction for inadvertance, but it requires action within six months of the judge's inadvertent action. The majority and I part company in their consideration of the second judgment's being a reconsideration of the JNOV order rather than an amendment which is allowed within ten days of the original order under Rule 52(b). Instead, the majority cites authority which concerns only Rule 59, which addresses a motion for new trial.
¶ 43. I am unwilling to make that jump, particularly since the Rules make specific provision by which the judge who entered the first order on February 24, 1992 could, on his own motion within the ten days following that order, enter a corrected order. He did that on February 27, 1992. That permission is found in Rule 52(b) which says:
Upon motion of a party filed not later than ten days after entry of judgment or entry of findings and conclusions, or upon its own initiative during the same period, the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may accompany a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised regardless of whether the party raising the question has made in court an objection to such findings or has filed a motion to amend them or a motion for judgment or a motion for a new trial.
M.R.C.P. 52(b) (emphasis added). I disagree with the majority's finding that "Since a trial judge does not have the authority to reconsider his denial of a motion for a JNOV, the court's jurisdiction was exhausted after the February 24 denial." The reason for my disagreement is that this was not a motion to reconsider the JNOV order. It was an allowed change under Rule 52(b). Whether or not the judge four or eight years later with twenty-twenty hindsight believes a prior action was not the correct thing to do is immaterial. The time for him to correct any errors is passed.
¶ 44. Also passed is the time for filing an appeal to either of the February 1992 orders. *390 An aggrieved party has thirty days' time in which to file an appeal, pursuant to M.R.A.P. Rule 4(a). This Court and the Mississippi Supreme Court have said repeatedly that the filing of notice of appeal within the time frame is jurisdictional. See Denton v. State, 762 So.2d 814 (Miss. Ct.App.2000); Byrd v. Biloxi Reg'l Med. Ctr., 722 So.2d 166 (Miss.Ct.App.1998); Bank of Edwards v. Cassity Auto Sales, Inc., 599 So.2d 579 (Miss.1992); Schmitt v. Capers, 573 So.2d 773 (Miss.1990). None of the parties filed appeals to either of the orders, and we are not at liberty to create an "end run" around all these rules to allow a trial judge years later to correct what very well may have been an error.
¶ 45. I believe that disregarding the six month period for corrections provided in Rule 60(b)(2) will come back to haunt us. I would hold that under Rule 60(b)(2) itself, there is a maximum of six months in which relief can be granted based on accident or mistake; here, the six months expired before 1992 did. Accordingly, I would dismiss this unauthorized declaratory judgment and enforce the February 27, 1992 order.
KING, P.J., BRIDGES AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] A similar rule, but no longer with a reference to terms of courts, replaced this duty:

It is the duty of the movant, when a motion or other pleading is filed, including motions for a new trial, to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may be heard after the commencement of trial in the discretion of the court. UCCCR 2.04.
[2] Terms of court issues were considered in Griffin, 565 So.2d at 546-48, citing Evers v. Truly, for Use and Benefit of Town of Fayette, 317 So.2d 414, 416-17 (Miss.1975). The statute relied upon by the Evers court has since been repealed. Miss.Code Ann. § 11-7-121 (1972) (repealed 1991).