# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00025-COA

**LONDON & STETELMAN INC., L & D, LLC, AND ANDREW D. STETELMAN**                    APPELLANTS

**v.**

**NELSON TACKETT AND JUDY TACKETT, BOTH INDIVIDUALLY AND AS CO-TRUSTEES OF THE NELSON AND JUDY TACKETT JOINT REVOCABLE TRUST, AND SUBWAY SANDWICH SHOPS OF HATTIESBURG, INC.**                    APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2018 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | ORVIS A. SHIYOU JR. |
| ATTORNEYS FOR APPELLEES: | R. LANE DOSSETT |
| | L. CLARK HICKS JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. This is a dispute between lessees of adjacent lots of 16th section land on Broadway Drive in Hattiesburg. A Subway sandwich store is on one lot, while the other lot is vacant. The chancellor found that The Nelson and Judy Tackett Joint Revocable Trust, which leases the Subway lot, had acquired a prescriptive easement over a portion of the vacant lot leased by L & D, LLC. On appeal, L & D argues that the chancellor erred by awarding a prescriptive easement. We find no reversible error and affirm. The prescriptive easement

will terminate upon the expiration of the lease on the vacant (servient) lot.

## FACTS AND PROCEDURAL HISTORY

¶2. This case involves adjacent 16th section lots on Broadway Drive in Hattiesburg.[1] Both lots are leased under ninety-nine year leases that appear to be valid according to an amicus curiae brief filed by the Secretary of State.

¶3. Nelson Tackett obtained the unexpired portion of the ninety-nine-year lease on one lot in 1987 and opened a Subway sandwich shop there. He re-conveyed the unexpired portion of the lease to The Nelson and Judy Tackett Joint Revocable Trust in 2012. Tackett has operated the Subway on the lot continuously since 1987. The ninety-nine-year lease commenced on June 17, 1947, and expires in 2046.

¶4. In 2014, Atlas Realty Ltd. gifted the unexpired portion of the ninety-nine-year lease on the adjacent lot to Temple B'Nai Israel, a local synagogue. A few days later, the synagogue conveyed the unexpired portion of the lease to L & D. Atlas had apparently owned the lease for at least twenty years prior to 2014. Atlas had subleased the lot to restaurants, the last of which was PR's Bar and Grill.

¶5. In 2002, there was a dispute between Tackett and the owners of PR's Bar and Grill. The owners of PR's apparently threatened to prevent Subway customers from parking on their property. Tackett's lawyer responded with a letter in which he claimed that

---

[1] The State holds title to 16th section lands in trust for the benefit of the local public schools. *Jones Cnty. Sch. Dist. v. Dep't of Revenue*, 111 So. 3d 588, 595 (¶¶22-23) (Miss. 2013).

Tackett/Subway had "acquired [an] easement[] by way of prescription" to use the disputed parking spaces "as a common parking area." PR's closed soon after, and no business has operated on the lot since. Sometime after PR's closed, the building was demolished. The lot is now vacant except for a concrete slab that was PR's foundation.

¶6. Before PR's closed, customers of both Subway and PR's (and its predecessors) parked in spaces on both lots. Since PR's closed, only Subway has used the asphalt portion of the vacant lot for customer and employee parking. Trucks making deliveries to Subway and picking up trash from Subway also use the vacant lot. Subway has also kept a dumpster on the vacant lot, which it uses several times per day. Subway has also maintained the disputed portion of the vacant lot. Subway's employees inspect the vacant lot for trash and hazards, and Subway has paid for and maintained light poles in the parking lot, paid for resurfacing of at least part of the vacant lot, and patched potholes in the vacant lot's asphalt. Tackett's son has also re-striped parking spaces on the vacant lot. Tackett claimed the parking area of the vacant lot as part of the leasehold he acquired in 1987—although no one ever told him that he owned the disputed area, and he admits that he never knew the exact location of the property line.

¶7. Tackett has never posted signs designating the vacant lot for Subway customer parking. Nor has Tackett ever attempted to exclude others from using the lot for parking. The parties dispute who maintained the grass portions of the vacant lot. Tackett and Subway managers testified that Subway maintained the grass, while Andrew Stetelman (one of the

3

members of L & D) testified that L & D maintained the grass. Tackett also claims that he paid some taxes on the vacant lot, while Stetelman produced tax records indicating that Atlas and then L & D have paid all taxes on the vacant lot.

¶8.    The parties also dispute the events leading up to this litigation. According to Tackett, Stetelman demanded rent for the disputed parking spaces on the vacant lot soon after L & D acquired its leasehold interest in 2014. Tackett refused, claiming that he was already entitled to use the disputed area. In contrast, Stetelman testified that he and Tackett initially discussed a joint venture to build a Taco Bell on the vacant lot but that Tackett stopped responding to phone calls and messages. Stetelman also claimed that he negotiated with an alleged agent of Tackett regarding the terms of a sub-lease of the disputed parking area but that Tackett ultimately refused to sign the sub-lease. In June 2014, L & D marked the alleged boundary line between the two lots with spray paint and put up ropes to block access to the vacant lot. Subway employees later removed the ropes.

¶9.    In June 2014, Tackett filed a complaint against L & D in the Forrest County Chancery Court to confirm title to the disputed area by adverse possession.[2] The chancellor granted a temporary restraining order and then, by agreed order, a preliminary injunction preventing L & D from blocking access to the vacant lot. The case eventually proceeded to trial in 2018.

_____

[2] The plaintiffs include Nelson Tackett and his wife, Judy, both individually and as co-trustees of The Nelson and Judy Tackett Joint Revocable Trust, and Subway Sandwich Shops of Hattiesburg, Inc. The defendants include L & D, Stetelman, and London & Stetelman Inc. The Trust and L & D are the actual owners of the leaseholds at issue. For simplicity, we refer to the parties as "Tackett" and "L & D."

4

¶10. After trial, the chancellor entered findings of fact, conclusions of law, and a final judgment. The chancellor found that Tackett did not prove that he "possessed" the disputed property so as to support a claim of adverse possession. However, the chancellor found that Tackett proved all elements necessary to establish a prescriptive easement. Therefore, the chancellor granted Tackett a prescriptive easement over the disputed property.

¶11. L & D then filed a "Motion to Correct, Reconsider and for Clarification" that asked the chancellor to, among other things, order Tackett to maintain liability insurance and pay a portion of the property taxes and maintenance costs related to the area burdened by the prescriptive easement. In August 2018, the chancellor held a hearing on L & D's motion. The parties agreed that the judgment should be amended to reflect that L & D owned the lease on the vacant lot, and the chancellor apparently directed the parties to develop the record or confer regarding the remaining issues raised in L & D's motion.[3]

¶12. There was no further action in the case until December 2018, when L & D sent the chancellor a detailed proposed order that, among other things, amended the judgment to require Tackett to maintain liability insurance covering the prescriptive easement (specifically, a $1,000,000 policy naming L & D as an additional insured) and required Tackett to pay fifty-one percent of the property taxes and maintenance costs related to the area burdened by the easement. Tackett objected to L & D's proposed order and submitted an alternative proposed order that corrected the judgment to reflect that L & D owned the

---

[3] The record does not contain a transcript of the August 2018 hearing.

lease on the vacant lot but otherwise denied all relief requested by L & D's pending motion. On December 5, 2018, the chancellor signed and entered L & D's proposed order amending the judgment. However, later that same day, the chancellor signed Tackett's proposed order and entered it as the "Final Judgment" in the case.[4] L & D then filed a notice of appeal.

¶13. On appeal, L & D argues that the chancellor erred by (1) granting Tackett a prescriptive easement; (2) granting a preliminary injunction without requiring Tackett to post a bond; and (3) entering Tackett's proposed order as the final judgment. By this Court's invitation, the Secretary of State and the Hattiesburg Public School District filed amicus curiae briefs on certain issues related to the properties' status as 16th section lands.

## ANALYSIS

¶14. This Court will not disturb a chancellor's findings of fact unless they are manifestly or clearly erroneous or the chancellor applied the wrong legal standard. *Keener Props. L.L.C. v. Wilson*, 912 So. 2d 954, 956 (¶3) (Miss. 2005). If the chancellor's findings of fact are supported by substantial evidence, we may not disturb those findings, even if we "might have found otherwise as an original matter." *Id.* We review issues of law de novo. *Id.*

    **I.**    **The chancellor did not commit any legal error or manifest error by granting a prescriptive easement.**

¶15. L & D argues that the chancellor erred by granting a prescriptive easement (1) because Tackett failed to prove that he "possessed" the disputed area and (2) because Tackett's claim

---

[4] The chancellor retired at the end of December 2018.

6

is barred by the doctrine of equitable estoppel. We address these arguments in turn.

¶16. First, L & D argues that the chancellor's finding that Tackett failed to establish "possession" of the property—and, thus, failed to prove adverse possession—should have defeated Tackett's claim for a prescriptive easement as well. In other words, L & D seems to argue that a claimant who fails to prove "possession" and adverse possession cannot, as a matter of law, establish a prescriptive easement either. This argument misses the mark. Adverse possession and prescriptive easements are similar concepts, but there are important distinctions between the two.

¶17. Although the general standard for establishing a prescriptive easement and adverse possession is the same, *see, e.g.*, *Thornhill v. Caroline Hunt Tr. Est.*, 594 So. 2d 1150, 1152 (Miss. 1992), there are differences in how the standard is applied. Most important for purposes of this case is the difference between "possession" and "use." "To acquire property by adverse possession, a claimant must show that its *possession* of the property was: (1) open, notorious, and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for a period of ten years." *Double J Farmlands Inc. v. Paradise Baptist Church*, 999 So. 2d 826, 829 (¶14) (Miss. 2008) (emphasis added). In contrast, "[t]o establish a prescriptive easement," the claimant must show that its "*use*" of the property was "(1) open, notorious, and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years." *Paw Paw Island Land Co. v. Issaquena & Warren Cntys. Land Co.*, 51 So.

7

3d 916, 923-24 (¶27) (Miss. 2010) (emphasis added). In short, a claim of ownership based on adverse possession requires proof of *possession* sufficient to satisfy the six common-law requirements, while a claim to a prescriptive easement to use the property requires proof of *use* sufficient to satisfy those same six requirements.

¶18.    The distinction between "possession" and "use" is well-recognized.[5] The distinction

---

[5] *See, e.g.*, Am. Jur. 2d *Easements* § 39 ("[A]n easement [by prescription] deals with the use of land while adverse possession deals with possession."); *Interior Trails Pres. Coal. v. Swope*, 115 P.3d 527, 529 (Alaska 2005) ("[T]he focus in a prescriptive easement claim is on 'use,' whereas the focus in an adverse possession case is on 'possession.'"); *Raab v. Casper*, 124 Cal. Rptr. 590, 596 (Ct. App. 1975) ("There is a difference between a prescriptive use of land culminating in an easement . . . and adverse possession which creates a change in title or ownership . . . ; the former deals with the use of land, the other with possession; although the elements of each are similar, the requirements of proof are materially different."); *Smith v. Muellner*, 932 A.2d 382, 400 (Conn. 2007) ("The proper inquiry in evaluating a claim that easement rights have been acquired by prescription is whether the claimant adversely *used* the property at issue and not whether he adversely *possessed* that property."); *Hunt Land Holding Co. v. Schramm*, 121 So. 2d 697, 700 (Fla. Dist. Ct. App. 1960) ("There is a distinction between acquiring of title by adverse possession and the acquiring of a prescriptive right. In the former, title must be through possession. In the latter, a prescriptive right is through the use of the privilege without actual possession."); *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001) ("[T]he concepts of adverse possession and easement by prescription are not one and the same. Rather, easement by prescription concerns the use of property and adverse possession determines acquisition of title to property by possession."); *Lacy v. Schmitz*, 639 S.W.2d 96, 99 (Mo. Ct. App. 1982) ("[T]he requirements needed to establish an *easement* by prescription deal with use, not possession."); *Plettner v. Sullivan*, 335 N.W.2d 534, 537 (Neb. 1983) ("For adverse possession there must be possession and occupation of the land . . . . In contrast, to acquire a prescriptive easement there needs to be only an adverse use for the prescriptive period."); *Sutherlin Sch. Dist. No. 130 v. Herrera*, 851 P.2d 1171, 1173 (Or. Ct. App. 1993) ("Although both depend on similar elements, adverse possession is based on a claim of *possession*, and an easement by prescription is based on a claim of *use*." (citations omitted)); *Cumulus Broad. Inc. v. Shim*, 226 S.W.3d 366, 378 (Tenn. 2007) ("Most authorities describe the doctrine of adverse possession and that of prescriptive easement as 'blended' but with differing histories; the primary distinction is that the adverse possessor *occupied* the land of

is also consistent with the different property interests that result from adverse possession, on the one hand, and prescriptive use, on the other. "A successful claim of adverse possession results in the claimant receiving ownership of the property while a successful claim for a prescriptive easement results in the claimant receiving an easement to use the property." *Knight v. Covington County*, 27 So. 3d 1163, 1170 (¶28) (Miss. Ct. App. 2009).

¶19.    Therefore, L & D's argument that the chancellor erred by granting a prescriptive easement because Tackett failed to prove "possession" is legally erroneous. Furthermore, Tackett produced evidence, and the chancellor found as fact, that Subway employees *used* the property for a continuous and uninterrupted period of more than ten years and in a manner sufficient to satisfy all elements of a prescriptive easement. According to Tackett's evidence, Subway used and maintained the disputed area by removing litter and inspecting it for hazards, resurfacing the parking area, striping parking places, maintaining grassy areas, and paying for and maintaining a trash dumpster and light poles in the parking area. In addition, Subway consistently used the disputed area for customer and employee parking, deliveries from suppliers, and garbage pickup. On this evidence, the chancellor did not clearly or manifestly err by finding that Tackett had acquired a prescriptive easement. Indeed, L & D fails to challenge the sufficiency of the evidence of Tackett's *use* of the

---

another, whereas, in prescription, there is merely adverse *use* of the land of another."); *Newman v. Michel*, 688 S.E.2d 610, 618 (W. Va. 2009) ("The main distinction between these concepts is that an adverse possession claimant occupies or possesses the disputed land, whereas one seeking a prescriptive easement makes some easement-like limited use of the disputed land.").

9

property with respect to any of the six specific elements of a claim for a prescriptive easement. Therefore, L & D's first argument is without merit.

¶20. L & D also makes a cursory argument that Tackett's claim is barred by the doctrine of equitable estoppel because Tackett allegedly negotiated with Stetelman to lease the disputed area. This argument fails for multiple reasons. First, the issue is waived because L & D failed to make such an argument in the trial court. *See, e.g.*, *Adams v. Bd. of Supervisors of Union Cnty.*, 177 Miss. 403, 170 So. 684, 685 (1936) ("It is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal."). Second, the argument fails for a lack of evidence because L & D failed to present any substantial evidence at trial to prove the content of the alleged negotiations. Third, the argument fails as a matter of law. A party that invokes the doctrine of equitable estoppel must show that it changed its position and detrimentally relied on the words or conduct of the other party. *Swartzfager v. Saul*, 213 So. 3d 55, 65 (¶¶27-28) (Miss. 2017). L & D argues that by negotiating to lease the disputed parking area, Tackett led L & D to believe that he did not claim a prescriptive easement. However, L & D cannot show that it *detrimentally* relied on anything that Tackett said or did in 2014. Tackett's use of the property had already ripened into a prescriptive easement before L & D acquired its leasehold rights in the vacant lot in 2014. Therefore, L & D cannot possibly show that it detrimentally relied on the alleged (but unproven) negotiations.

## II. L & D's claim that the chancellor erred by issuing a preliminary injunction without a bond is both waived and moot.

10

¶21. L & D next argues that the chancellor erred by granting Tackett a preliminary injunction without requiring him to post a bond pursuant to Mississippi Rule of Civil Procedure 65(c). This issue is both waived and moot. It is waived because L & D failed to pursue the issue in the trial court. L & D initially agreed to an order granting a preliminary injunction without a bond. Months later, L & D did file a motion to dissolve the injunction, arguing in part that a bond was required. However, L & D waived the issue by failing to pursue its motion to a hearing and failing to obtain a ruling.[6]

¶22. The issue is also moot because we affirm the chancellor's final judgment awarding an easement. Rule 65(c) requires the party who successfully obtains a restraining order or preliminary injunction to post a bond "for the payment of such costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained[.]" M.R.C.P. 65(c). L & D was not "wrongfully enjoined or restrained." Therefore, the absence of a bond is a moot point.

### III.   The chancellor did not err or exceed his authority by entering Tackett's proposed order as the final judgment.

¶23. L & D's final argument on appeal is that the first order that the chancellor entered on December 5, 2018—L &D's proposed order that required Tackett to, inter alia, maintain

---

[6] *See, e.g.*, *Billiot v. State*, 454 So. 2d 445, 456 (Miss. 1984) ("Our rule is that a party making a motion must follow up that action by bringing it to the attention of the judge and by requesting a hearing upon it. It is the responsibility of the movant to obtain a ruling from the court on motions filed by him, and failure to do so constitutes a waiver of same." (citations and quotation marks omitted)).

liability insurance and pay property taxes and maintenance costs related to the area burdened by the easement—is the controlling final judgment in the case. L & D argues that once the chancellor entered that order, he lost jurisdiction to enter a second order and new final judgment on December 5 (Tackett's proposed order and final judgment). We disagree.

¶24. We begin with a brief recap of the procedural history leading up to the two orders entered on December 5. The chancellor entered findings of fact, conclusions of law, and a final judgment on April 17, 2018. L & D then filed a "Motion to Correct, Reconsider and for Clarification," which asked the chancellor to clarify, correct, amend, and add to the final judgment in a number of respects. L & D's motion was filed within ten days after the judgment was entered, as required by Mississippi Rule of Civil Procedure 59(e). Next, the first order that the chancellor entered on December 5—L & D's proposed order—essentially granted all relief requested in L & D's Rule 59(e) motion. Later that same day, however, the chancellor entered a second order and "final judgment"—Tackett's proposed order and judgment—that corrected the judgment to reflect that L & D owned the lease on the vacant lot but denied all other relief requested in L & D's Rule 59(e) motion. The chancellor denied the additional relief that L & D requested because he found that it raised "wholly new issues" that had not been pled or litigated at trial. Although the chancellor's second order did not mention his first order, it would appear that he either changed his mind or realized that the first order had been entered by mistake. In any event, the second order clearly repudiated the first order. L & D then filed a notice of appeal.

12

¶25. Citing *Edwards v. Roberts*, 771 So. 2d 378 (Miss. Ct. App. 2000), L & D argues that the chancellor lacked jurisdiction to enter a second order amending the judgment. However, *Edwards* is not on point. In that case, the defendants filed a post-trial motion for judgment notwithstanding the verdict (JNOV) pursuant to Mississippi Rule of Civil Procedure 50(b). *Id.* at 380 (¶2). The trial court entered an order denying the motion but then three days later entered a second order granting a JNOV as to one defendant and granting a JNOV in part as to the other defendant. *Id.* No appeal was taken, and years later the defendants filed a new action to determine which of the court's orders was controlling. *Id.* On appeal, this Court held that "[s]ince a trial judge does not have the authority to reconsider his denial of a motion for a JNOV, the court's jurisdiction was exhausted after the [initial] denial" of a JNOV, and, therefore, its second order granting a JNOV "was a nullity." *Id.* at 386-87 (¶30).

¶26. The procedural posture of this case is significantly different. In this case, the chancellor's first order on December 5 *granted* L & D's motion under Rule 59(e) and materially *amended* the original judgment. The chancellor's order resulted in a new and materially different judgment that imposed a series of new obligations on Tackett. These new obligations related to issues that were not addressed by the original judgment, such as taxes, insurance, and maintenance costs.

¶27. This sort of significant amendment to a judgment permits a party aggrieved by the amendment to file a new motion under Rule 59(e). Applying the parallel federal rule, the United States Court of Appeals for the Seventh Circuit held that when, as in this case,

13

> a court *alters* its judgment, a person aggrieved by the alteration may ask for correction. A successive motion directed to the same judgment is ineffectual, but when there is a new judgment—an alteration independently sufficient to restart the time for appeal—there is also a new period in which to file a motion under Rule 59.

*Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986). The court explained that a "significant change in a judgment"—one that "changes matters of substance"—is a "new judgment" that is subject to a new motion under Rule 59(e). *Id.* This appears to be the uniform rule in the federal courts.[7] In addition, this Court applied *Charles*'s rule in *Dixon v. Dixon*, 238 So. 3d 1191 (Miss. Ct. App. 2018), where we held that a party was permitted to file a second motion for reconsideration because the trial court significantly altered its judgment in response to the first such motion. *Id.* at 1196 n.7 (citing *Charles*);[8] *cf. Penton v. Penton*, 156 So. 3d 323,

---

[7] *See, e.g.*, *Kraft Inc. v. United States*, 85 F.3d 602, 607 (Fed. Cir. 1996) (explaining that all circuits that have addressed the issue have held that a "party adversely affected by judgment which has been changed significantly" may file a new Rule 59 motion); *Wright v. Preferred Research Inc.*, 891 F.2d 886, 890 (11th Cir. 1990) (holding that a party aggrieved by the entry of a new and significantly altered judgment may file a Rule 59(e) motion challenging the amendment); *Wages v. I.R.S.*, 915 F.2d 1230, 1233 n.3 (9th Cir. 1990) (recognizing that a party may file a successive Rule 59 motion "when the court substantively alters its judgment in response to a Rule 59 motion"); *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988) ("[W]here, as here, the court grants a Rule 59(e) motion and significantly alters its prior judgment, we find that the federal rules do not prohibit the opposing party from filing a Rule 59(e) motion in an attempt to persuade the district court to reinstate its original judgment."); *Harrell v. Dixon Bay Transp. Co.*, 718 F.2d 123, 127 (5th Cir. 1983) (holding that an order that set aside part of the original judgment "resulted in the entry of a *new* judgment," which permitted the party aggrieved by the change to file a new motion to amend the judgment under Rule 59(e)).

[8] "[I]n all relevant particulars, Rule[] 59(e) . . . [of the Mississippi Rules of Civil Procedure is] worded verbatim the same as Rule[] 59(e) . . . of the Federal Rules of Civil Procedure. [The Mississippi Supreme Court has] consistently and almost routinely said that, where this is the case, the federal construction of the counterpart rule will be persuasive of

326-27 (¶11) (Miss. Ct. App. 2010) (stating that the time for taking an appeal runs anew "when the lower court changes matters of substance . . . in a judgment previously rendered" (quoting *Rezzonico v. H & R Block Inc.*, 182 F.3d 144, 150 (2d Cir. 1999)).

¶28. The same rule applies in this case. The chancellor's first December 5 order—L & D's proposed order—significantly amended the court's original judgment. For that reason, the order started a new ten-day period for motions to alter or amend the judgment under Rule 59(e). M.R.C.P. 59(e). Therefore, the chancellor did not lose jurisdiction when he entered the first December 5 order.

¶29. Of course, the chancellor did not wait for Tackett to file a new motion under Rule 59(e). Rather, the chancellor sua sponte amended the judgment a second time by entering Tackett's proposed order as the final judgment. The chancellor's sua sponte action was proper. Within Rule 59(e)'s ten-day window, a trial court is authorized to amend the judgment sua sponte. *See Penton*, 156 So. 3d at 325-26 (¶9) (recognizing that a court may amend the judgment "on its own initiative" within "ten days after the entry of the judgment"). Therefore, in summary, the chancellor's second December 5 order was proper from both a jurisdictional and procedural standpoint.

¶30. L & D does not address the merits of the chancellor's second December 5 order but only argues that the chancellor lacked jurisdiction to enter it. The chancellor committed no

what our construction of our similarly worded rule ought to be." *Bruce v. Bruce*, 587 So. 2d 898, 903 (Miss. 1991).

error in the second order. Rather, the chancellor correctly stated that the new issues raised in L & D's Rule 59(e) motion had not been pled or litigated. Moreover, L & D has never cited any legal authority to support its requests for relief on those issues.

**IV.** **The prescriptive easement will terminate when the lease on the vacant lot expires.**

¶31. The Secretary of State takes the position that although the State owns both properties at issue, the State is not a necessary party to this litigation because any prescriptive easement burdening the vacant lot will terminate at the expiration of L & D's lease. We agree. The Secretary's position is consistent with the general rule regarding prescriptive easements that burden a leasehold. Jon W. Bruce and James W. Ely Jr., *The Law of Easements and Licenses in Land* § 10:15, Westlaw (database updated June 2020) ("[A]n easement that burdens a leasehold is extinguished upon the expiration of the lease."); *cf.* Gee Ogletree, *Interests Subject to Adverse Possession*, *in* 7 *Encyclopedia of Mississippi Law* § 60:109 (Jeffrey Jackson et al. eds., 2d ed. 2018) ("[A] claim of adverse possession may ripen against the tenant of leasehold property but not against the landlord unless the landlord had clear notice of the adverse claim."). The Secretary's position is also consistent with the rule that a party may not obtain a prescriptive easement against the State. *Miss. State Highway Comm'n v. Blackwell*, 350 So. 2d 1325, 1328 (Miss. 1977); *accord* Bruce & Ely Jr., *supra*, § 5:5 ("Absent an enabling statute, no prescriptive easement may be obtained against . . . a state."); *see also Cinque Bambini P'ship v. State*, 491 So. 2d 508, 521 (Miss. 1986) ("The State's title may not be lost via adverse possession . . . . Under no circumstances may title held by the

16

State for the public use or benefit be so lost."), *aff'd sub nom. Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469 (1988).

¶32.    In this case, the State holds title to the vacant lot.  *See supra* note 1.  Tackett cannot obtain a prescriptive easement against the State but only against the leasehold interest presently held by L & D.  Therefore, the easement will terminate when the present (ninety-nine-year) lease on the vacant lot expires.

## CONCLUSION

¶33.    The chancellor committed no legal or manifest error by granting Tackett a prescriptive easement over the vacant lot.  That easement will terminate when the present lease on the vacant lot expires.

¶34.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR.  McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**