WILSON, J., FOR THE COURT:
*1193 ¶ 1. William Tracy Dixon (Tracy) filed a motion (1) to terminate or modify his duty to pay alimony to his ex-wife Sandra Michelle Dixon (Michelle) and (2) to terminate his duty to pay child support for his daughter Amanda, whom he alleged was emancipated because she was cohabiting with her boyfriend. The chancellor found that Amanda was not emancipated and that Tracy was not entitled to any modification. We find no reversible error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Michelle and Tracy married in 1992 and had twin girls, Ashton and Amanda, in 1996. They separated and divorced in 2012. The divorce decree granted Michelle physical custody of their daughters with joint legal custody and liberal visitation for Tracy. Tracy was ordered to pay child support of $770 per month to Michelle and to pay other specified expenses, including private school tuition. Tracy was also required to maintain health insurance for his daughters and pay two-thirds of their non-covered medical expenses. Finally, Tracy was ordered to pay Michelle $2,000 per month in permanent periodic alimony.
¶ 3. On September 16, 2014, Tracy filed a complaint to modify his child support and alimony obligations. He alleged that there had been material changes in circumstances since the divorce judgment was entered in that Amanda and Ashton had graduated from high school and moved out of Michelle's home, Amanda was cohabiting with her boyfriend, Ashton was attending community college on a softball scholarship, and Michelle's income had increased so that she could "support herself." Tracy asked the court to declare Amanda emancipated and to terminate his obligation to pay child support for her, to permit him to pay Ashton's child support directly to her, and to terminate or decrease his obligation to pay alimony to Michelle.
¶ 4. On January 29, 2015, the court held a hearing on the issues of emancipation and child support. Amanda testified that, over both of her parents' objections, she moved in with her boyfriend, Will, after she graduated from high school in May 2014. Will bought a car for her to use and began paying for her cell phone. Amanda was on scholarship at Jones County Junior College (JCJC) and was studying to be a nurse practitioner. However, she testified that she still relied on her mother for support. Her mother bought her clothes, bought her lunch or dinner two or three times a week, and gave her money for gas. Amanda also testified that she would need more help from her parents after she transferred to the University of Southern Mississippi.
¶ 5. Amanda testified she had a good relationship with her father until she told him that she planned to attend JCJC and did not want to play softball anymore. Tracy wanted her to play softball with her sister on a scholarship at Southwest Mississippi Community College, and they "had a big argument" about it. They argued again in May 2014 when Amanda told Tracy that she was moving in with Will, and they had visited only once since. However, Amanda testified that she loved her father and desired to have a relationship with him.
¶ 6. Michelle testified that she still bought Amanda meals and clothes and still gave her money for gas. Michelle also testified that she regularly gave Ashton cash or transferred money to her checking account. Ashton was on scholarship at Southwest but intended to transfer to JCJC and *1194 move back in with Michelle at the end of the school year. Michelle testified that her daughters both kept clothes at her house and could move back into their rooms at any time.
¶ 7. Tracy testified that he wanted to mend his relationship with Amanda, but she had ignored his many phone calls, texts, and invitations. He testified that he visited with Ashton regularly, bought her meals, and gave her money for gas. He also testified that he was current on his child support and alimony obligations.
¶ 8. At the conclusion of the hearing, the chancellor (1) denied Tracy's request to declare Amanda emancipated; (2) declined to terminate Amanda's child support under Hambrick v. Prestwood , 382 So.2d 474 (Miss. 1980) ; and (3) denied Tracy's request to permit him to pay Ashton's child support to her directly.
¶ 9. The next hearing in the case was held one year later on January 26, 2016. In the interim, Tracy's income decreased, and he was laid off of work on August 12, 2015. Tracy then unilaterally reduced his alimony payments, eventually stopped paying alimony altogether, and also fell behind on his child support payments. In response, Michelle served Tracy with a complaint for contempt. Michelle failed to file the complaint until the day of the hearing, but Tracy did not object to proceeding on the issue of contempt. Indeed, Tracy's attorney told the court that the issues of contempt and modification should "both be tried at the same time" because both involved "the same evidence," i.e., Tracy's ability to pay.
¶ 10. At the time of the parties' divorce, Tracy was employed by Weatherford Fishing and Rental as a fishing tool supervisor[1] with a total monthly income of $18,516 and a net monthly income of $13,054. Tracy testified that by May 2015, the number of active oil and gas rigs had fallen off dramatically, and his monthly income had decreased to $6,218 (total) and $4,974 (net) due to a loss of bonus pay. Then, on August 12, 2015, Tracy was laid off by Weatherford with five weeks of severance pay. After he was laid off, Tracy went to work for his neighbor as a carpenter, and his monthly income decreased further to $2,880 (total) and $2,319 (net). Tracy testified that there had been numerous layoffs in the local oil industry, and he claimed that no one in the industry was hiring. Tracy also testified that he had cashed out his 401(k) account to pay debts and to continue to pay for insurance and that he was no longer able to pay his alimony and child support obligations. He had not made his full alimony payment in a year, he had not paid any alimony in over six months, and he was three months behind on his child support payments.
¶ 11. Tracy testified that First Financial Bank had approved him for a $1,400,000 loan to build chicken houses and begin operations in the poultry business. In his deposition, he testified that he did not want to go back to work in the oil industry, that he preferred his work as a carpenter, and that he would not take a job in the oil industry if it was offered to him. He acknowledged that he had worked in the oil industry for twenty years and knew all along that was an "up and down" business.
¶ 12. Tracy also admitted that he received $49,276 when he cashed out his retirement account, but he did not use any of the money to pay child support or his alimony arrearage. Instead, he used the money to pay other debts, including a $19,731 loan on his camper, a $9,172 loan on his Polaris Ranger utility vehicle, and *1195 credit card debt. He also used the money to pay for his current wife's car tag, to pay his current wife's OB-GYN, and to pay for renovations to his home and furniture for a new nursery.[2]
¶ 13. As of January 2016, Michelle was employed as a secretary with a gross monthly income of $2,000 and net monthly income of $1,606.[3] She owned a home with an estimated value of $135,000 and a $96,000 mortgage. She had a retirement account with a balance of $130,440. She testified that she had to take out a loan to pay her attorney and had incurred credit card debt to help her daughters pay expenses. Ashton had moved back in with Michelle in May 2015, and Amanda had transferred to USM and moved to Hattiesburg. Michelle testified that Amanda went out to eat with Tracy or visited him at his house a couple of times a month in addition to talking to him on the phone and texting with him. Finally, Michelle testified that, as of the hearing, Tracy's total alimony arrearage was $22,644.63, and his total child support arrearage was $2,968.
¶ 14. At the conclusion of the hearing, the chancellor announced his ruling from the bench. He first observed that "the entire case ha[d] changed since the time [Tracy's motion to modify child support and alimony] was filed" in September 2014. Tracy's motion addressed Michelle's increased income and alleged ability to support herself and Amanda's cohabitation with her boyfriend. Tracy's loss of income and employment occurred months later. The chancellor also explained that because Tracy was behind on child support and alimony, the court first had to "resolve this issue of whether or not [Tracy was] in contempt" and "how [he could] purge himself." As the chancellor put it, Tracy had "to wash his hands" before he could obtain any modification.
¶ 15. The chancellor found that Tracy's total arrearage (alimony and child support) was $25,612.63. He then stated that he was "going to ... fashion a remedy" that he thought would be fair and equitable, although he "assure[d]," "guarantee[d]," and "promise[d]" the parties "that the Court of Appeals [would] reverse" it. The chancellor ruled that Tracy could purge himself of contempt by paying $12,800 of the arrearage at a rate of $500 per month, beginning February 1, 2016.[4] The chancellor then reduced Tracy's child support to $464 per month,[5] suspended his obligation to pay alimony (other than the arrearage) for one year, and reduced alimony to $750 per month effective February 1, 2017. Finally, the chancellor awarded Michelle attorney's fees of $1,250 based on Tracy's contempt.
*1196 The chancellor's rulings were memorialized in a final judgment of contempt and modification entered February 10 nunc pro tunc January 26, 2016.
¶ 16. Tracy then hired a new lawyer and filed a "Motion for Reconsideration, Correction of Judgment, or, in the Alternative, a New Trial."[6] On March 30, 2016, the court entered a "Post-Trial Order" granting Tracy a "new trial" on the issues of contempt, his arrearage, alimony, and attorney's fees. However, the order did not address the merits of those issues, and no "new trial" was held. The chancellor later explained that he signed the "Post-Trial Order" granting a "new trial" in error. He did not intend to grant a new trial, as the case had been tried fully, the parties had ample opportunity to present evidence on all issues, and no new or additional evidence was necessary. The chancellor only intended to reconsider his prior findings and rulings in an amended final judgment.
¶ 17. On May 9, 2016, the court entered a detailed "Revised and Amended Opinion of the Court." The court's revised opinion again found that Tracy was in contempt for not paying alimony and child support. The court emphasized Tracy's failure to use any of the $49,276 that he withdrew from his retirement account to pay down his arrearage. The court noted that Tracy used some of those funds to pay off a loan on his Polaris Ranger, which he still owned and valued at $13,000. The court further noted that Tracy had been approved for a $1,400,000 loan to start a poultry business. The court found that Tracy had funds available to pay alimony and child support "irrespective of any reduction in his salary" but "chose not to do so." Therefore, he was "in willful, contumacious contempt of court."
¶ 18. The court then ruled that Tracy could purge himself of contempt by paying Michelle (a) $13,000 of his arrearage by May 20, 2016, which he could do "by selling or pledging his unencumbered Polaris Ranger"; (b) the balance of the arrearage ($12,612.63) by August 1, 2016; and (c) attorney's fees of $2,500 for his contempt. The court further found that Tracy had "unclean hands" and was not entitled to any modification of alimony or child support until he purged himself of his contempt. Finally, the court found that Tracy was not entitled to a modification for the additional reason that there had "been no unanticipated substantial and material change in circumstances." On May 24, 2016, the court then entered an amended final judgment of contempt and modification, which summarized and implemented the rulings in the court's revised opinion.
¶ 19. Tracy again hired a new lawyer and filed a motion attacking the revised opinion and amended final judgment.[7] The court denied Tracy's motion on July 5, 2016, and Tracy filed a timely notice of appeal. On appeal, he alleges that the *1197 chancery court erred by finding that Amanda should not be emancipated, by not reducing his child support, and by not terminating his alimony. He also alleges that the chancellor exceeded his authority under the Mississippi Rules of Civil Procedure-specifically, Rule 59(d)-by entering a revised opinion and amended final judgment. We address these issues in turn below. We find no reversible error and affirm.
ANALYSIS
¶ 20. "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." Mabus v. Mabus , 890 So.2d 806, 810 (¶ 14) (Miss. 2003). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Id. at 819 (¶ 53). "However, on issues of law, our standard of review is de novo." Stroh v. Stroh , 221 So.3d 399, 406 (¶ 17) (Miss. Ct. App. 2017).
I. The chancellor did not abuse his discretion by finding that Amanda was not emancipated.
¶ 21. Citing Mississippi Code Annotated section 93-11-65(8)(b)(iii) (Rev. 2013), Tracy argues that Amanda's cohabitation with her boyfriend required the chancellor to find that she was emancipated and terminate Tracy's obligation to pay child support for her. We disagree.
¶ 22. Section 93-11-65(8)(a) provides that unless the underlying child support judgment states otherwise, "emancipation shall occur when the child" turns twenty-one, marries, commences full-time military service, or is convicted of a felony and sentenced to a term of two or more years' incarceration. Miss. Code Ann. § 93-11-65(8)(a) (emphasis added). In contrast, section 93-11-65(8)(b) provides that a "court may determine that emancipation has occurred and no other support obligation exists when the child," inter alia , "[c]ohabits with another person without the approval of the parent obligated to pay support." Id. § 93-11-65(8)(b)(iii) (emphasis added). "A basic tenet of statutory construction is that 'shall' is mandatory and 'may' is discretionary." Khurana v. Miss. Dep't of Revenue , 85 So.3d 851, 854 (¶ 9) (Miss. 2012) (quoting Franklin v. Franklin ex rel. Phillips , 858 So.2d 110, 115 (¶ 15) (Miss. 2003) ). Thus, subparagraph (8)(b)(iii) applies in this case, but it did not require the chancellor to declare Amanda emancipated or terminate child support for her. Rather, this provision merely gave the chancellor discretion . See Wesson v. Wesson , 818 So.2d 1272, 1282 (¶ 25) (Miss. Ct. App. 2002) (discussing the chancellor's "discretionary decision concerning ... emancipation"); Deborah H. Bell, Mississippi Family Law § 13.09[2], at 452 (2d ed. 2011) (explaining that in circumstances enumerated in subsection (b) "a court has discretion to determine that a child is emancipated").
¶ 23. Moreover, Amanda and Michelle both testified that Amanda is a full-time student, that she does not have a job, and that she still relies on Michelle's support to some extent. They also testified that her need for support would increase once she transferred to USM, which she subsequently did. We cannot say that the chancellor abused his discretion by not finding that Amanda was emancipated. See Andrews v. Williams , 723 So.2d 1175, 1178-79 (¶¶ 12-14) (Miss. Ct. App. 1998) (affirming the chancellor's discretionary ruling that child was not emancipated where child was "unable to support himself independently" and desired to attend college *1198 but needed help with college expenses).
II. The chancellor did not abuse his discretion by declining to modify child support or by declining to modify or terminate alimony.
¶ 24. Tracy next argues that the chancellor erred by not reducing child support and by not terminating alimony based on his job loss and decreased income.[8] As discussed above, the chancellor's revised opinion and amended final judgment gave two reasons for denying Tracy's requests to modify child support and terminate or modify alimony: (1) Tracy had "unclean hands" and (2) Tracy failed to prove a material and unanticipated change in circumstances. We address these issues in turn.
¶ 25. The chancellor ruled that Tracy had "unclean hands" and was "not entitled to any relief" due to his "willful, contumacious contempt of court"-in particular, his failure to pay any alimony from the $49,276 that he spent from his 401(k). While the chancellor's finding of contempt is supported by ample evidence, the chancellor erred to the extent that he found that Tracy's contempt barred his request for modification. Tracy certainly came into court with unclean hands because he was in arrears and failed to prove that he had paid Michelle all that he could. See Kincaid v. Kincaid , 213 Miss. 451, 456, 57 So.2d 263, 265 (1952) (holding that a payor in arrears may not obtain a modification unless he proves that "performance has been wholly impossible," and that "he earned all he could, ... lived economically and paid all surplus" to the payee). "However, the entry of a judgment for arrearages cleanses the payor's hands" and allows the chancellor to review the merits of the payor's request for modification. Lewis v. Pagel , 172 So.3d 162, 176 (¶ 32) (Miss. 2015) (citing Lane v. Lane , 850 So.2d 122, 126 (¶ 12) (Miss. Ct. App. 2002) ); accord, e.g. , McDonald v. McDonald , 39 So.3d 868, 879-80 (¶ 34) (Miss. 2010) ; Andres v. Andres , 22 So.3d 314, 320-21 (¶¶ 28-29) (Miss. Ct. App. 2009) ; Howard v. Howard , 968 So.2d 961, 976 (¶¶ 36-37) (Miss. Ct. App. 2007). Therefore, the chancellor's entry of a judgment against Tracy for the full amount had the effect of cleansing Tracy's hands, and Tracy's request for modification was properly before the court.
¶ 26. As an alternative basis for his ruling, the chancellor also addressed the merits of Tracy's request for modification. As to both alimony and child support, a modification requires proof of a material and substantial change in circumstances since the date of the prior judgment. See McEwen v. McEwen , 631 So.2d 821, 823 (Miss. 1994) ; McKee v. McKee , 382 So.2d 287, 288 (Miss. 1980). In addition, the change in circumstances must be one that was not reasonably foreseeable at the time of the original judgment. See McEwen , 631 So.2d at 823 ; Tingle v. Tingle , 573 So.2d 1389, 1391 (Miss. 1990). The burden of proof is on the party requesting modification. See Adams v. Adams , 467 So.2d 211, 214 (Miss. 1985) ; McCraw v. McCraw , 759 So.2d 519, 521 (¶ 7) (Miss. Ct. App. 2000).
*1199 ¶ 27. In his revised opinion and amended final judgment, the chancellor found that Tracy had not proven a substantial and material change in circumstances. Tracy acknowledged that he "knew at the time of [his] divorce" that the oil industry is "up and down"; he also testified that he expects that the industry "will go back up, and it will go back down again." Based on this testimony, the chancellor reasoned Tracy knew at the time of his divorce that he might be out of work for periods of time and later rehired. The chancellor also found that Tracy "has the earnings capacity to pay the alimony and child support previously" ordered by the court but that Tracy "chooses not to" pursue a new job in the oil industry. Tracy acknowledged that he testified in his deposition that if Weatherford offered him "the same job" he "just would not take it."[9] The court also discussed that Tracy could have continued to pay alimony and child support had he used his savings for that purpose, rather than to pay off debt on his Polaris and "to enlarge his [own] home," among other things. In addition, the court discussed Tracy's ability to borrow $1,400,000 for his new poultry business.
¶ 28. Thus, there is evidence in the record to support the chancellor's finding that Tracy choose not to look for a new job in the oil industry. There is also evidence to support the chancellor's finding that Tracy chose to spend his savings on luxuries, his new home, and his new family rather than to meet his alimony and child support obligations.[10] In addition, Tracy's poultry business was yet not in operation at the time of the chancellor's ruling, so Tracy's income from that business remained uncertain. Indeed, although Tracy had applied and been approved for a $1,400,000 loan to start the business, he claimed that he had no idea how much money he could expect to make. He testified that he had not investigated how much money he would make and could not hazard an estimate or a "guess." On this record, we cannot say that the chancellor abused his discretion or manifestly erred by finding that Tracy failed to prove a permanent reduction in his earning capacity or a material and substantial change in circumstances.
III. The chancellor did not exceed his authority by entering a revised opinion and amended final judgment.
¶ 29. In his final issue on appeal, Tracy argues that the chancellor exceeded his authority under the Mississippi Rules of Civil Procedure by entering a revised opinion and amended final judgment. As discussed above, after the initial final judgment was entered (on February 10, 2016, nunc pro tunc January 26, 2016), Tracy *1200 filed a "Motion for Reconsideration, Correction of Judgment, Or In The Alternative For New Trial." The chancellor then entered an order granting a "new trial," which did not address or rule on the merits of any of the issues in the case. Finally, without holding a "new trial" or hearing any additional testimony or evidence, the chancellor entered a revised opinion and amended final judgment, which is the subject of this appeal. Tracy argues that the chancellor's entry of a revised opinion and amended final judgment violated Rule 59(d), which provides as follows:
Not later than ten days after entry of judgment the court may on its own initiative order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.
M.R.C.P. 59(d). Specifically, Tracy argues that the chancellor effectively ordered a "new trial"-either sua sponte or "for a reason not stated in [Tracy's timely] motion" for a new trial. Id. If the former, Tracy says that the chancellor violated Rule 59(d) by acting more than "ten days after entry of judgment." Id. If the latter, Tracy says that the chancellor violated Rule 59(d) by not "giving [him] notice and an opportunity to be heard." Id.
¶ 30. We conclude that Tracy has misinterpreted the case's procedural history and the chancellor's rulings. Tracy's "Motion for Reconsideration" primarily sought to alter or amend the judgment in various respects-he sought to change the final judgment based on the evidence already presented, not a "new trial." In fact, the motion's prayer for relief did not even mention a "new trial." Rule 59(a)-(d) governs a motion for a new trial. However, Rule 59(e) governs a motion to alter or amend the judgment.
¶ 31. Rule 59(e) simply provides that "[a] motion to alter or amend the judgment shall be filed not later than ten days after entry of judgment." M.R.C.P. 59(e). Interpreting the nearly identical federal rule,[11] federal courts have held that "[a] judge may enlarge the issues to be considered in acting on a timely motion under Rule [59(e) ]." Charles v. Daley , 799 F.2d 343, 347 (7th Cir. 1986). The court may amend any part of the judgment, and the court is not limited to the grounds raised in the motion. EEOC v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local No. 120 , 235 F.3d 244, 250 (6th Cir. 2000). "The salient fact is that a motion to amend judgment was timely filed. Such gave the [trial] court the power and jurisdiction to amend the judgment for any reason, if it chose to do so, and it was not limited to the ground set forth in the motion itself." Varley v. Tampax Inc. , 855 F.2d 696, 699 (10th Cir. 1988) ; accord Bullock v. Buck , 611 Fed.Appx. 744, 746 n.2 (3d Cir. 2015) ("In ruling on a Rule 59(e) motion, a District Court is not limited to the grounds set forth in the motion itself."); Walker v. Walker , 216 So.3d 1262, 1272-74 (Ala. Ct. Civ. App. 2016).
¶ 32. We conclude that these decisions are consistent with our Supreme Court's recognition of a trial court's "broad[ ] discretionary authority under Rule 59(e) to grant relief."
*1201 Bruce v. Bruce , 587 So.2d 898, 904 (Miss. 1991). Our Supreme Court has held that "[w]hen hearing a motion under Rule 59(e), a trial court proceeds de novo, if not ab initio." Id. " Rule 59(e) provides the trial court the proverbial chance to correct its own error ...." Id.
¶ 33. Tracy's filing of a timely motion to alter or amend the judgment under Rule 59(e) suspended the finality of the judgment and permitted the chancellor to consider the various issues in this case "de novo, if not ab initio." Id. At that point, the chancellor had "the power and jurisdiction to amend the judgment for any reason, if it chose to do so, and it was not limited to the ground set forth in the motion itself." Varley , 855 F.2d at 699. On appeal, we review the chancellor's amended final judgment on its own merits.
CONCLUSION
¶ 34. The chancellor did not abuse his discretion or manifestly err in finding that Amanda was not emancipated or in denying Tracy's request to modify his alimony and child support obligations. Nor did the chancellor exceed his authority by entering a revised opinion and amended final judgment.
¶ 35. AFFIRMED.
LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON AND FAIR, JJ., CONCUR. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., WESTBROOKS AND TINDELL, JJ.

Fishing is the retrieval of drilling equipment and removal of junk and other obstructions from a well bore so that drilling operations can resume.

Tracy remarried shortly after his divorce from Michelle. He and his new wife were expecting a child any day as of the January 2016 hearing.

At the time of the parties' divorce, she had a gross monthly income of $1,041 and a net monthly income of $916.

On appeal, Tracy repeatedly emphasizes the chancellor's prediction "that the Court of Appeals [would] reverse" his ruling. However, Tracy ignores that the chancellor was referring to his partial forgiveness of Tracy's alimony and child support arrearage. See Tanner v. Roland , 598 So.2d 783, 786 (Miss. 1992) ("[C]hild support payments vest ... as they accrue. Once ... vested, ... they cannot be modified or forgiven by a court"); Gregg v. Montgomery , 587 So.2d 928, 933 (Miss. 1991) ("[A] court cannot give relief from civil liability for any [alimony] payments that have already accrued."). As discussed below, the chancellor subsequently entered an amended final judgment, which did not forgive any part of the arrearage. Therefore, the chancellor's comment is not relevant to the amended final judgment, which is the subject of this appeal, or any issue before this Court on appeal.

The court left in place Tracy's obligation to maintain health insurance for his daughters.

The motion was filed within ten days from the entry of the judgment and therefore tolled the time for appealing from the judgment. See M.R.A.P. 4(d) ; Woods v. Victory Mktg. LLC , 111 So.3d 1234, 1236 (¶ 7) (Miss. Ct. App. 2013).

The motion was filed within ten days of the court's amended final judgment and therefore tolled the time for appealing from the judgment. See M.R.A.P. 4(d) ; Charles v. Daley , 799 F.2d 343, 348 (7th Cir. 1986) (holding that "when a court alters its judgment, a person aggrieved by the alteration may ask for correction"). The full title of this motion was: "Motion to Strike from the Record and the pleadings in this action the Revised and Amended Opinion of the Court Filed May 9, 2016, and the Amended Final Judgment of Contempt and Modification Filed May 24, 2016, and if Said Filings are not Stricken From the Record Herein, Then in the Alternative, William Tracy Dixon Makes Motion That the Amended Final Judgment of Contempt and Modification be Clarified."

Tracy misunderstands the amended final judgment entered against him. Tracy's brief on appeal repeatedly states that the chancellor's revised opinion "reinstated in toto" the original final judgment (entered February 10, 2016, nunc pro tunc January 26, 2016). Tracy's brief also assumes that he is entitled to the prospective downward modifications of child support and alimony granted in the original final judgment. However, as described above, the chancellor's revised opinion and amended final judgment both hold Tracy liable for the full amount of the arrearage and find that he is not entitled to any modification.

It is true, as the partial dissent points out, that Tracy contradicted himself at trial. However, the chancellor, as the finder of fact, was entitled to find Tracy's deposition testimony more credible than his trial testimony. See Henson v. City of Dundee , 682 F.2d 897, 908 n.16 (11th Cir. 1982) (explaining that if a party's trial testimony contradicts his prior deposition testimony, and the deposition testimony is "read ... to" and "acknowledged" by the party at trial, the fact-finder may then consider and rely on the deposition testimony "as substantive evidence").

See, e.g. , De Marco v. De Marco , 199 Miss. 165, 168, 24 So.2d 358, 359 (Miss. 1946) (holding that alimony generally "takes precedence over" "obligations imposed ... by a second marriage"); Rushing v. Rushing , 909 So.2d 155, 159 (¶ 17) (Miss. Ct. App. 2005) (holding that a payee was not entitled to a modification of alimony based on his remarriage and two new children-"when [he] remarried and fathered two children, he knew of his obligation to [his ex-wife]"); Magee v. Magee , 754 So.2d 1275, 1280 (¶ 11) (Miss. Ct. App. 1999) (holding that a payee was not entitled to a modification based on new personal bills and debts).

Federal Rule of Civil Procedure 59(e) differs from our Rule 59(e) only in that it permits the motion to be filed within twenty-eight days of entry of judgment. Decisions interpreting a parallel federal rule are "persuasive of what our construction of our rule ought to be." Brown v. Credit Ctr. Inc. , 444 So.2d 358, 364 n.1 (Miss. 1983).