# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01421-COA

WILLIAM HAYS STEPHENS                                    APPELLANT

v.

RACHEL STEPHENS                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/2019 |
| TRIAL JUDGE: | HON. PAULA DRUNGOLE-ELLIS |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | TIMOTHY C. HUDSON COURTNEY BRADFORD SMITH LINDSAY JO WILKINSON |
| ATTORNEYS FOR APPELLEE: | LEE ANN SELF TURNER ASHLYN BROWN MATTHEWS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 08/24/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2020-CA-00106-COA

WILLIAM HAYS STEPHENS                                    APPELLANT

v.

 RACHEL STEPHENS                                         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2020 |
| TRIAL JUDGE: | HON. PAULA DRUNGOLE-ELLIS |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | TIMOTHY C. HUDSON COURTNEY BRADFORD SMITH LINDSAY JO WILKINSON |

ATTORNEYS FOR APPELLEE:      LEE ANN SELF TURNER
                                     ASHLYN BROWN MATTHEWS

NATURE OF THE CASE:        CIVIL-DOMESTIC RELATIONS
DISPOSITION:                AFFIRMED - 08/24/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    The Chancery Court of Oktibbeha County granted William and Rachel Stephens a divorce on the ground of irreconcilable differences. The court entered its final judgment of divorce in June 2016, which incorporated a property settlement, child custody, and support agreement (PSA). The PSA required William to pay monthly child support in the amount of $2,500, maintain a minimum of $500,000 in a life insurance policy, and pay half of all of the children's medical expenses not covered by insurance.

¶2.    When William failed to perform the actions ordered by the PSA, the chancery court granted Rachel's motion for contempt. William appealed the chancery court's judgment of August 2019 (Stephens I), which held him in contempt and denied his request to modify the child-support obligation.[1]

¶3.    In October 2019, Rachel filed a petition for contempt, enforcement, and other relief, alleging that William had failed to pay child support from the court's August 2019 order to the filing of the petition. William subsequently appealed the court's January 2020 order

---

[1] William's first appeal was assigned case number 2019-CA-01421 and is referenced as "Stephens I." It involves the chancellor's August 2019 order denying William's petition for modification and holding William in contempt for the sixth time.

(Stephens II), judgment which held him in contempt for the seventh time.[2] The two appeals have been consolidated.

¶4.    The appeals were consolidated, and we find no error in either order appealed from; therefore we affirm.

### FACTS AND PROCEDURAL HISTORY

¶5.    William and Rachel Stephens were married on August 26, 2006. Three daughters were born of the marriage. In June 2016, the Stephenses were divorced on the ground of irreconcilable differences. During the divorce proceedings, the chancellor adopted PSA signed and agreed to by both parties. In the PSA, William and Rachel agreed that they would have joint legal custody of the children, with Rachel having physical custody. The PSA also provided that William would pay child support in the amount of $2,500 due on the 15th of each month, starting on July 15, 2016. William was required to pay half of all medical expenses not covered by insurance and to maintain a minimum of $500,000 in term life insurance for the children's benefit.

¶6.    Compelling William to abide by the divorce decree had been challenging for Rachel and the court, with the court holding William in contempt seven times. William's first contempt citation for failure to comply with court orders occurred on October 26, 2016. On December 19, 2016, he was held in contempt again and ordered to pay his child support arrearage totaling $5,000. In February 2017, William petitioned the court to modify his child-

---

[2] William's second appeal was assigned case number 2020-CA-00106 and is referenced as "Stephens II." It involves the chancellor's January 2020 order finding William in contempt for the seventh time.

3

support obligation, claiming a reduction in income and that the children's needs had decreased. The chancellor denied William's petition in July 2017. On July 7, 2017, the court held William in contempt for the third time and ordered him to pay $2,500 in past-due child support. At the time of William's fourth contempt citation on December 14, 2017, the court found that William owed $7,500 in child-support payments, not including the unpaid attorney's fees and costs that he was previously ordered to pay. On July 30, 2018, William was found in contempt for a fifth time after the court found that he owed $13,500 in child support.

¶7.     William again moved for modification of his child support obligation in December 2018. He claimed that his income had significantly decreased and that a $2,500 monthly payment was unreasonable. In April 2019, Rachel filed a counter-petition for contempt, enforcement, and other relief. On August 7, 2019, after a hearing, the chancellor determined that William could pay the child support but deliberately failed to do so. The chancellor denied William's request for modification and held him in contempt for the sixth time for failure to pay child support and for failing to maintain the life insurance coverage. At the time of the chancellor's August 2019 order (Stephen I), the chancellor found that William owed $20,887.57 in delinquent child support and $3,982 in attorney's fees. The chancellor again ordered William to obtain the life insurance. The chancellor required William to pay the entire amount by September 6, 2019 or face incarceration. On September 6, 2019, William filed a notice of appeal and paid $24,687 as a supersedeas bond.

¶8.     On October 14, 2019, Rachel filed another petition for contempt enforcement and

other relief to recover child support that vested after the August 2019 order (Stephens I). The amount Rachel sought to recover totaled $7,500. Rachel also petitioned the court regarding William's failure to pay his share of the children's non-covered medical expenses of $426.82 and to require William to furnish proof that he had obtained life insurance as ordered by the court. After a hearing, the chancellor found in January 2020 that William owed an additional $10,650 in child support and $426.82 in non-covered medical expenses; the court also granted Rachel attorney's fees in the amount of $5,230.50. The court ordered that William be incarcerated immediately until he paid Rachel $11,076.82 (Stephens II). William filed a notice of appeal and paid $13,847 as a supersedeas bond.

¶9.     As noted, these two cases have been consolidated on appeal.

## STANDARD OF REVIEW

¶10.    "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Evans v. Evans*, 75 So. 3d 1083, 1086 (¶10) (Miss. Ct. App. 2011) (quoting *Henderson v. Henderson*, 757 So. 2d 285, 289 (¶19) (Miss. 2000)). Unless the chancellor's decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard, we will not disturb a chancellor's factual findings. *Wallace v. Wallace*, 12 So. 3d 572, 575 (¶12) (Miss. Ct. App. 2009). When reviewing a chancellor's interpretation and application of the law, our standard of review is de novo. *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001).

## DISCUSSION

## I.      The August 2019 Order (Stephens I)

¶11.    William claims that the chancery court erred when it denied his request to modify his child support obligation despite his inability to pay.

### A.      Denial of Modification Request

¶12.    At the outset, we note that at the time William petitioned the court to modify his child support payments, William was in arrears and had failed to prove that he had paid them to Rachel. "The doctrine of clean-hands provides that he who comes into equity must come with clean hands." *Andres v. Andres*, 22 So. 3d 314, 320 (¶25) (Miss. Ct. App. 2009) (internal quotation marks omitted) (quoting *Cook v. Whiddon*, 866 So. 2d 494, 498 (¶13) (Miss. Ct. App. 2004)). "[T]he clean[-]hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." *Vincent v. Rickman*, 167 So. 3d 245, 249 (¶11) (Miss. Ct. App. 2015) (quoting *Bailey v. Bailey*, 724 So. 2d 335, 337 (¶6) (Miss. 1998)).

¶13.    However, "the entry of a judgment for arrearages cleanses the payor's hands" and allows the chancellor to consider the merits of the payor's request for modification. *Dixon v. Dixon*, 238 So. 3d 1191, 1198 (¶25) (Miss. Ct. App. 2018) (citing *Lewis v. Pagel*, 172 So. 3d 162, 176 (¶32) (Miss. 2015)). Here, the chancellor's entry of an order against William for the full amount of prior arrearage had the effect of cleansing William's hands for purposes of obtaining a remedy in equity. Therefore, the court could properly consider William's request for modification in Stephens I.

¶14.    "A child support decree is never final." *Howard v. Howard*, 968 So. 2d 961, 969 (¶10)

6

(Miss. Ct. App. 2007) (internal quotation mark omitted). Where substantial and material changes in circumstances exists, Mississippi law is clear that parties may request child support modification. *See Evans v. Evans*, 994 So. 2d 765, 770 (¶16) (Miss. 2008) (citing *Gillespie v. Gillespie*, 594 So. 2d 620, 623 (Miss. 1992)). One factor to consider in determining whether a material change has occurred "is the relative financial condition and earning capacities of the parties." *Martin v. Borries*, 282 So. 3d 472, 474 (¶9) (Miss. Ct. App. 2019) (citing *Bailey v. Bailey*, 724 So. 2d 335, 337 (¶7) (Miss. 1998)). However, "the change in circumstances must be one that was not reasonably foreseeable at the time of the original judgment." *Dixon*, 238 So. 3d at 1198 (¶26); *see also McEwen v. McEwen*, 631 So. 2d 823, 821 (Miss. 1994); *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990). Unless a petitioner shows that he has performed the obligations in the original decree or that performance is wholly impossible, he may not petition for modification. *Bailey*, 724 So. 2d at 337 (¶6) (Miss. 1998). The party requesting modification bears the burden of proof. *Id*.; *see Adams v. Adams*, 467 So. 2d 211, 214 (Miss. 1985).

¶15.    William claims that his inability to pay child support entitled him to a downward modification. For this petition to modify child support, the chancellor could only consider evidence of events occurring subsequently to the court's order in July 2017 denying William's modification request. *See Howard v. Howard*, 913 So. 2d 1030, 1041 (¶24) (Miss. Ct. App. 2005) (stating that "[w]hile [a father was] precluded from relitigating any claim [that] was or could have been presented in his original motion to modify support obligations, [the father was] not precluded from showing a material change in circumstances occurring

7

subsequent to the November 2001 opinion"). Furthermore, in regard to William's alleged inability to pay, the chancellor could only consider circumstances from the order for past-due child support in July 2018 to the time of trial in August 2019. *See Dunaway v. W.H. Hooper & Associates Inc.*, 422 So. 2d 749, 751 (Miss. 1982) (Under the related doctrine of collateral estoppel, "the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action.").

¶16.    In the August 2019 order, the chancellor found that William had not proved a substantial and material change in circumstances. William testified that at the time of the original decree in 2016, his monthly gross income was $3,900. At the August 2019 trial, William stated that his current gross income was $3,686 per month. Thus, the difference in William's income was less than $300 per month. William had testified that he ended his employment with the Mississippi Department of Transportation (MDOT) in July 2018, realizing that he would be incarcerated if he did not pay the delinquent child support and that he did not want to be fired for being absent. However, William had been given until September 3, 2018, to pay that arrearage and to purge himself of contempt. William voluntarily left his employment two months prior to the possibility of incarceration. We have "never . . . allowed a reduction in a pre-existing child support obligation due to voluntary termination of employment." *Bailey*, 724 So. 2d at 337 (¶7). Therefore, William is not entitled to a modification where his actions voluntarily reduced his income. *See id*. at (¶8) (finding that our supreme court "has never previously allowed a reduction in a pre-existing

8

child support obligation due to voluntary termination of employment.").

¶17.    During the August 2019 trial, the chancellor heard testimony regarding William's spending habits. Based on that testimony, the chancellor found that William's standard of living had not changed and that the money William's used on certain purchases could have been used to pay for child support. The chancellor recognized that although William experienced a small reduction in income, he had not reduced his standard of living. *See Holcombe v. Holcombe*, 813 So. 2d 700, 706 (¶32) (Miss. 2002) (finding that while a former husband's business suffered a loss, the ex-husband's "lifestyle and spending habits indicate the loss in business had no effect upon his purchasing decisions"); *see also Morris v. Morris*, 8 So. 3d 917, 922 (¶22) (Miss. Ct. App. 2009). In her determination, the chancellor did not err. William continued to travel and indulge in other activities such as going to concerts, football games, eating at restaurants, and visiting bars. During cross-examination, the chancellor heard testimony that William allocated $250 for entertainment purposes, including paying for the meals of others.

¶18.    Additionally, William claims that he agreed to pay the original $2,500 in child support at the time of the divorce decree because he was expecting an increase in income. "[U]sually a spouse's actual income is assessed in determining the amount of child support." *Howard*, 968 So. 2d at 972 (¶25). However, in the Stephenses' initial divorce decree, William had voluntarily agreed to pay monthly child support in the amount of $2,500. Where parties voluntarily enter into such an agreement, and the court approves it, the agreement is enforceable as though it is entered by the court following contested proceedings. *Seeley v.*

9

*Stafford*, 840 So. 2d 111, 113 (¶12) (Miss. Ct. App. 2003). In other words, "[a] property settlement agreement that is incorporated into a divorce decree 'must be interpreted by courts as any other contract.'" *Siders v. Zickler*, 312 So. 3d 1224, 1128-29 (¶13) (Miss. Ct. App. 2021) (quoting *Dennis v. Dennis*, 234 So. 3d 371, 376 (¶15) (Miss. 2017)). We will enforce an agreement's language as written if the agreement's language is "clear or unambiguous." *Id*. (citing *West v. West*, 891 So. 2d 203, 210 (¶14) (Miss. 2004). The PSA required William to pay Rachel $2,500 per month for the support of the children, pay one-half of the medical expenses not covered by insurance, and "shall . . . purchase a minimum of $500,000 in term life insurance for the benefit of the minor children of the marriage."

¶19. The agreement is clear as to what actions William was required to carry out. The court gave William additional time to purge himself of his child support arrearage and obtain life insurance. He did not. Since William failed to show that a substantial and material change had occurred, the chancellor did not err by denying his petition to modify his child support obligations.

### B. Chancellor's Finding William in Contempt

¶20. Chancellors have substantial discretion regarding contempt matters. *Hunt v. Hunt*, 289 So. 3d 313, 317 (¶11) (Miss. Ct. App. 2019) (citing *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014)). An adjudication of contempt must be proved by clear and convincing evidence. *Allred v. Allred*, 735 So. 2d 1064, 1067 (¶10) (Miss. Ct. App. 1999). We will not reverse a chancellor's finding of contempt if supported by substantial credible evidence. *Wilson v. Stewart*, 171 So. 3d 522, 527 (¶15) (Miss. Ct. App. 2014) (quoting

10

*Witters v. Witters*, 864 So. 2d 999, 1004 (¶18) (Miss. Ct. App. 2004)).

¶21. The purpose of finding a party in civil contempt is to enforce compliance with a court order. *Evans*, 75 So. 3d at 1087 (¶14). Failing to comply with a court order is prima facie evidence of contempt. *McIntosh v. Dep't of Human Servs.*, 886 So. 2d 721, 724 (¶11) (Miss. 2004). "A defendant may avoid a judgment of contempt by establishing that he is without the present ability to discharge his obligations." *Stewart*, 171 So. 3d at 527 (¶16) (citing *Varner v. Varner*, 666 So. 2d 493, 496 (Miss. 1995)). In other words, prima facie evidence could only be rebutted by showing that the person is not able to pay, noncompliance was not willful, the violated order was ambiguous, or performance was impossible. *Garner v. Garner*, 283 So. 3d 120, 141 (¶93) (Miss. 2019). However, if a defendant raises an "inability to pay as a defense, the burden is on him to show this with particularity, not just in general terms." *Id*. Thus, "this proof must be clear and convincing and rise above a simple state of doubtfulness." *McIntosh*, 886 So. 2d at 724-25 (¶11). William failed to meet this burden.

¶22. William contends that the chancellor erred by not allowing him or his former employer Blake Hill to testify regarding his finances prior to June 2018. According to William's attorney, Hill would testify regarding William's financial condition at the time of the original divorce and child support order. In 2016, William made $50,000 per year. He had agreed to pay $2,500 per month for child support. William did not receive the pay increase he expected, claiming that a material change in circumstances existed. The testimony William sought was proffered and documented in the record.

¶23. We have noted that collateral estoppel precludes parties from "relitigating a specific

issue actually litigated[,] determined by . . . , and essential to the judgment [in a former action], even though the subsequent action involves a different cause of action." *Howard*, 968 So. 2d at 973 (¶27); *see also Walker v. Benz*, 914 So. 2d 1262, 1266 (¶12) (Miss. Ct. App. 2005). In the chancellor's July 2018 order, the court concluded that William had "the ability to pay and willfully failed to live up to his support obligations." Accordingly, William was precluded from relitigating any issue in 2019 that was litigated or could have been litigated in the July 2018 proceedings regarding his inability to pay. We cannot find that the chancellor erred by not admitting that testimony into evidence.

¶24. Additionally, William claims that since he petitioned for a reduction in his child support payments, the chancellor erred by finding him in contempt.

¶25. "Parties who are unable to comply with court-ordered child support payments should promptly petition the chancellor for a reduction of support." *Evans*, 75 So. 3d at 1087 (¶15) (citing *Thurman v. Thurman*, 559 So. 2d 1014, 1016 (Miss. 1990). Thus, "[w]here a party promptly files for a modification of support based on his inability to pay, a finding of contempt is not proper." *Id*.; *see also Cumberland v. Cumberland*, 564 So. 2d 839, 847 (Miss. 1990).

¶26. William made his first request to modify his child support obligations in February 2017. In its July 2017 order, the court denied his petition, finding he had failed to show that a substantial and material change of circumstances had occurred since the court entered the divorce decree in June 2016. On December 27, 2018, William filed another petition for modification requesting a reduction in his child support payments. In his petition, William

claimed that his income had significantly decreased since the divorce decree was entered and that a monthly child support payment of $2,500 was unreasonable. While William did file for modification of child support based on his inability to pay, it was not filed promptly. Specifically, William waited one year and five months from the denial of his last petition to modify before seeking to modify his child support obligations again.

¶27. We find that the chancellor did not err by holding William in contempt. William raises inability to pay as a defense, but he offered no evidence to support his claim. His general allegations are not enough. *McIntosh v. Dep't of Human Servs.*, 886 So. 2d 721, 724-25 (¶11) (Miss. 2004). At the August 2019 trial, William failed to show or explain why he could not pay the child support payments. On cross-examination, William admitted that he only experienced a $300 a month decrease in his income. He also admitted that he quit his job with MDOT in June 2018, rather than being fired, after being presented with the choice by the court to pay what he owed in child support or face incarceration. On the issue of life insurance, William claimed that he had life insurance while working for MDOT, but he stated that he was no longer covered after leaving that employment. He stated that he was attempting to obtain life insurance at the time of his testimony. The chancellor also heard testimony concerning William's spending in regard to his extracurricular activities, including football games, concerts, trips, restaurants, bars, liquor stores, and a dating website. Based on the testimony given, the chancellor determined that William had not changed his standard of living and had willfully chosen not to pay child support.

¶28. We agree with the chancellor that William failed to prove his defense with

13

particularity and therefore did not met his burden. We find the chancellor's contempt citation to be supported by substantial credible evidence.

## II.    January 2020 Order (Stephens II)

¶29.    William claims that the chancellor's January 2020 order is void in its entirety because the court lacked jurisdiction.

¶30.    Generally, a "trial judge loses all jurisdiction once a case is appealed." *Halle v. Harper*, 869 So. 2d 439, 440 (¶3) (Miss. Ct. App. 2004) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1075-76 (Miss. 2000)). However, as previously mentioned, "no decree of alimony or child support is ever truly a final judgment, but always subject to modification based upon a material change of circumstances." *Austin v. Austin*, 981 So. 2d 1000, 1005 (¶16) (Miss. Ct. App. 2007). Therefore, the chancery court "retain[s] continuous jurisdiction over final decrees providing for alimony, custody of children and child support, and may modify a former decree when the circumstances and conditions have changed after rendition of a former decree." *Campbell v. Campbell*, 357 So. 2d 129, 130 (Miss. 1978). Even if an appeal is pending, a "court may re-examine the question of custody or support at anytime" if a change of conditions is shown. *Harper*, 869 So. 2d at 440 (¶3) (citing *Smith v. Necaise*, 357 So. 2d 931, 933 (Miss. 1978)). The chancery court retained its jurisdiction over this matter.

¶31.    William specifically contends that he could not be found in contempt since he filed a petition to modify, which was currently on appeal.

¶32.    "Child support payments vest in the child as they become due." *Howard*, 968 So. 2d at 977 (¶41) (citing *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1992)). "Each payment

14

that becomes due and [remains] unpaid becomes a judgment against the supporting parent." *Roland*, 598 So. 2d at 786. So when "a payor moves for downward modification of child support, the payments due continue to vest during the pendency of the motion." *Howard*, 968 So. 2d at 977 (¶41) (citing *Cumberland*, 564 So. 2d at 847. If a modification is granted, it will take effect on the date of the judgment granting the modification. *Id*.

¶33.  Here, the chancellor denied William's petition to modify in the August 2019 order. Therefore, William's child support payments continued to vest starting on or before August 15, 2019, and each month after. When William failed to make these child support payments and neglected to carry out the other court ordered tasks, Rachel filed another petition for contempt, enforcement, and other relief in October 2019.

¶34.  At the hearing, William again raised inability to pay as a defense, and he "bore the burden of proving, by clear and convincing evidence, that he was not in contempt." *Roberts v. Roberts*, 110 So. 3d 820, 826 (¶18) (Miss. Ct. App. 2013). William admitted that he had not paid child support between August 2019 and January 2020, as required, and William testified that he had found new employment and received his first paycheck on January 2, 2020. However, William did not pay his January child support  and waited until the day before the trial to give Rachel a partial child-support payment totaling $1,350.

¶35.  The chancellor also heard testimony that William went on several trips, including two trips to Africa. William admitted that he had to seek medical treatment for malaria he contracted after one of his trips to Africa. The treatment cost at least $400. William testified that he had been to a concert and several football games after the August 2019 order and

15

later revealed that he had purchased a vehicle for $6,000. According to William, the only change he made to reduce his expenses was to lower the control for his heat to sixty-four degrees.

¶36. In regard to Rachel's request for payment of half of the children's medical payments not covered by the insurance, William claimed that he had not received notice of the amounts. However, the record reflects that William knew months prior to the January trial of the children's upcoming medical appointments and costs. William also claimed that he obtained life insurance coverage, but he conceded that he had not provided proof as the chancellor ordered in August 2019.

¶37.    Based on the testimony given, the chancellor found William in contempt for failure to pay his child support arrearage, pay his half of the children's medical expenses, and maintain life insurance coverage. William had the burden of proof to rebut the prima facie case that he was in contempt. However, he again failed to meet this burden. There was evidence that William willingly chose not to pay his child support obligations and that he could afford to take multiple trips. We find that the chancellor did not err by holding William in contempt. The chancellor's decision was supported by substantial evidence.

¶38.    In its January 2020 order, the chancellor also granted Rachel attorney's fees and expenses.

¶39.    "When a party is held in contempt for violating a valid judgment of the court, attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Garner v. Garner*, 283 So. 3d 120, 142 (¶98) (Miss.

16

2019). "Fees awarded on this basis, though, should not exceed the attorney's time and expenses incurred as a result of the contemptuous conduct." *Krohn v. Krohn*, 294 So. 3d 680, 688 (¶20) (Miss. Ct. App. 2020) (quoting *Heisinger v. Riley*, 243 So. 3d 248, 259 (¶45) (Miss. Ct. App. 2018)). The award for contempt actions shall be made by the court "based on the information already before it and the court's own opinion based on experience and observation." *Id*. (quoting *Taylor v. Timmons (In re C.T.)*, 228 So. 3d 311, 319 (¶21) (Miss. Ct. App. 2017)). "A successful party in a contempt action need not show that he or she was unable to pay their attorney." *Id*. (citing *Wilkinson v. Wilkinson*, 281 So. 3d 153, 167 (¶52) (Miss. Ct. App. 2019).

¶40. Here, the chancellor found William in willful contempt for his failure to pay child support and to obtain life insurance in the minimum amount of $500,000. Therefore, the court did not err in awarding Rachel attorney's fees.

## CONCLUSION

¶41. For the reasons stated above, we affirm the chancery court's orders on child support modification, contempt, and attorney's fees.[3]

¶42. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, PJJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[3] Rachel has filed a motion for attorney's fees on appeal pursuant to Mississippi Rule of Appellate Procedure 27(a), seeking an award of appellate attorney's fees in the amount of $14,204. This Court will address the matter of attorney's fees in a separate order following the issuance of this opinion.